## BARTLETT *vs.* GALE and others.

Where the complainant had a mortgage upon the land of G. for $1500, which land was previously encumbered by two judgments, and another mortgage which was prior to the judgments, and J. G. with full knowledge of the several encumbrances, purchased the land under an execution issued upon the junior judgment, and bid therefor $2000 more than the amount of such judgment, but much less than the real value of the land, and, instead of paying the surplus money to the sheriff, retained it in satisfaction of other claims against the mortgagee, who was the defendant in the execution, and took from him a discharge to the sheriff for such surplus, and thereupon received the sheriff's deed for the land : *Held*, that J. G. purchased the land subject to the lien of the prior mortgage and judgment, and that the complainant, as the subsequent mortgagee, was entitled to the surplus money arising from the sheriff's sale, or so much thereof as was necessary to pay the amount due on his mortgage : *Held*, also, that the surplus mon-ey which had not been paid to the sheriff by the purchaser, was an equita-ble lien upon the land, in his hands, to the extent of the complainant's mortgage.

1834.

Bartlett
v.
Gale.

A mortgage being a specific lien upon the mortgaged premises, if such premises are sold under a prior judgment the lien of the mortgage attaches upon the surplus monies in the hands of the sheriff, who has no right to pay such surplus to the mortgagor ; and if the purchaser is permitted to retain the surplus monies in satisfaction of an antecedent debt due from the mortgagor, he takes it subject to the specific lien of the mortgagee, although he has neither actual or constructive notice of the mortgage.

Where an answer on oath is waived, the answer is not evidence in favor of the defendant for any purpose ; but as a pleading, the complainant may avail himself of admissions and allegations contained therein which establish the case made by his bill.

August 5. THE bill in this cause was filed in June, 1830, to obtain payment and satisfaction of the balance due upon a bond and mortgage given by G. B. Gale and wife to J. Lambe, in October, 1827. The mortgage, as originally given, included a tavern stand in the county of Washington, and a farm in the county of Orange ; and was conditioned for the payment of $4000, with interest. By a written agreement between G. B. Gale, T. Tole, junior, and J. Lambe, previous to the death of the latter who died in August, 1829, $2500 of the mortgage was assigned to Tole, which sum was to be and remain a lien upon the tavern stand exclusively ; and the residue of the bond and mortgage, which still belonged to Lambe, was to be and remain a lien upon the farm in Orange county only. To this last part of the bond and mortgage the complainant became entitled, under the will of J. Lambe, his father-in-law, and with the assent of the executors. And there remains unpaid thereon $1500, together with the interest from the first of February, 1828 ; except $100, which was paid to the complainant, on account of the interest, in October, 1829. When this mortgage was given, the farm in Orange county was encumbered by a mortgage of $1500, given to H. Westervelt, in January, 1822, and subsequently assigned to D. Vallance. There were also two judgments against G. B. Gale, in the supreme court. The first of which judgments was in favor of D. Bailey, for the sum of $180,97 ; and was assigned to James Gale, one of the defendants in this suit, in April, 1825. The other was in favor of J. Williams, for the sum of $681,87, and was docketed the 20th of February, 1826. An execution was issued upon this last judgment, upon which the farm in Orange county was sold by the sheriff,

in February, 1830. James Gale, a brother of the mortgagor, became the purchaser, for the price or sum of $3100; leaving a surplus, beyond the amount due on the execution, of more than $2000. For this surplus G. B. Gale, the defendant in the execution, gave a discharge to the sheriff, immediately after the sale, although no part of it was in fact paid. And the sheriff gave a certificate, in the usual form, that J. Gale had become the purchaser of the premises on the execution, for the sum of $3100, that being the highest bid for the same.

By the answer of the defendants, their oath to which was waived by the complainant in his bill, they admitted the principal facts stated in the bill. But the defendant J. Gale insisted that the fair value of the farm at the time of the sheriff's sale did not exceed $4000; and that he was entitled to deduct from the sum bid, the amount of all liens which were prior to the judgment under which he purchased, and all sums due to him from G. B. Gale, the defendant in the execution. The cause was heard upon the pleadings and proofs.

*A. L. Jordan,* for the complainant. The complainant had a lien on the money produced by the sale of the farm to the same extent that he had upon the farm itself prior to the sale. This principle is settled in *Belcher* v. *Butler,* (*Eden's R.* 530,) and recognized upon its broadest ground in *Astor* v. *Miller,* (2 *Paige's Rep.* 68.)

James Gale is chargeable with the amount of his bid, to the extent of the complainant's mortgage, after paying off the judgment upon which the same was sold. He bought only the right and title of G. B. Gale, subject to the first encumbrances.

The complainant's lien is not divested or affected by the claim which James Gale had against Gilbert B. Gale. The doctrine of *taching* securities is of very questionable equity, at the best, but has never been applied to any case at all like the present. James Gale, in order to tach his demand to the legal title acquired by him under the sale upon Williams' judgment, must have shewn, 1. That he had a specific lien upon the farm for his demand by *mortgage;* a lien by virtue of a judgment even would not have been sufficient. It must ap-

1834.

Bartlett
v.
Gale.

pear that the party lends his money upon the credit of the land, in order to entitle him to tach his lien for that money to a first lien, so as to " *squeeze out*" an intermediate mortgage. (*Brace* v. *Dutchess of Marlborough,* 2 *Peere Wms.* 491 ; reported also in *Mosely, page* 50. *Mouet* v. *Paske,* 2 *Atk.* 53, *Anon.* 2 *Ves.* 662. *Brereton* v. *Jones,* 1 *Eq. Cas. Abr.* 325. *pl.* 10. *Hameston* v. *Rogers,* 1 *Ves. jun.* 513. *Fethergill* v. *Kendrick,* 2 *Vern.* 234.) 2. That his subsequent lien was created without notice either actual or constructive of the intermediate lien. (*Brace* v. *Dutchess of Marlborough,* 2 *Peere Wms.* 491. *Wortley* v. *Birkbeach,* 2 *Ves.* 571.) Now, in the present case, James Gale had no lien whatsoever ; his demand was an unliquidated, simple contract demand, and much of that accrued after the complainant's mortgage was executed and duly registered. The arrangement between Gilbert B. Gale and James Gale, by which the former released the latter from the payment of the surplus monies, was a fraud upon the complainant. But independent of any actual fraud, the arrangements between the two Gales cannot affect the complainant's rights.

The law charges the land, in the hands of James Gale, with the prior encumbrances. He cannot allege a mistake of the law. He cannot retain the surplus upon the ground of appropriating it, previous to the service of the injunction, to the payment of an antecedent debt due him. But James Gale, having actual or constructive notice of the complainant's mortgage, by its registry, would not have been authorized to have paid over the surplus to G. B. Gale.

*S. J. Wilkins,* for the defendants. The defendant James Gale is obliged to account for nothing beyond the value of the farm. He is to be credited with the amount of the encumbrances prior to the judgment under which he purchased, and of his demands against G. B. Gale. James Gale ought not to be compelled to restore the monies paid to him. He had a right, at least, to retain the amount of the judgment assigned to him, and all sums expended as agent of G. B. Gale, in the management of the farm, and for interest paid on prior encumbrances. He had a right also to tack his other claims to the judgment. James Gale can only be compelled to account for

the amount of his bid, after deducting the prior encumbrances. After the sale, the lien of the complainant was upon money; which equity cannot follow, unless it can be distinguished from other money. (*Whitcomb* v. *Jacob*, 1 *Salk.* 160. 5 *T. R.* 227.) Before the service of the injunction, the surplus had been appropriated to the payment of G. B. Gale's debt to James Gale. The right of the latter thus being vested, equity will not divest it.

A very slender agreement for allowing one debt out of another will make it a payment. (*Jeffs* v. *Wood et al.*, 2 *Peere Wms. Rep.* 128. *Scott* v. *Surman*, *Willes' Rep.* 400.) The equities of James Gale and of the complainant are equal; and the former, by his superior vigilance, having obtained payment of his debt, the maxim *melior est conditio possidentis* will apply. (*Adams* v. *Dyer*, 8 *Johns. Rep.* 268. 11 *Idem*, 228.)

THE CHANCELLOR. The defendants' counsel is wrong in supposing that the whole answer must be taken together as evidence, and that the complainant cannot avail himself of the admissions in one part of it, without being also bound by the statements and allegations in other parts of the same answer. This is not so, even where the complainant calls for an answer on oath; except as to those parts of it which are responsive to the bill. But where an answer on oath is waived, although as a pleading the complainant may avail himself of admissions and allegations in the answer which go to establish the case made by the bill, such answer is not evidence in favor of the defendant for any purpose.

There is no doubt, in this case, as to the complainant's right to the surplus upon the sheriff's sale beyond the amount which was due on the execution; or to so much of such surplus as will be sufficient to pay the amount of his mortgage. The mortgage was a specific lien upon the land; and that being sold under a prior encumbrance, the lien of the mortgage attached upon the surplus monies raised on that sale. The sheriff had no right to pay such surplus monies to G. B. Gale, the mortgagor, or to discharge the purchaser from the payment thereof, on his order, when he knew that the complainant had a specific lien thereon by virtue of his mortgage.

According to the decision of the court for the correction of errors, in the case of *Astor* v. *Hoyt*, (5 *Wendell's Rep.* 603,) the mortgagor in possession is to be considered as the real owner of the land, subject to the specific lien of the mortgage. He might therefore discharge the surplus monies arising on the sale, except that part thereof upon which the complainant's mortgage was a specific lien ; or he might assign the surplus to the purchaser, as was done in this case, in payment of antecedent debts. But the purchaser takes the surplus charged with the prior equity of the specific lien of the mortgage thereon. It is not pretended in this case that J. Gale, the purchaser at the sheriff's sale, was ignorant of the complainant's lien upon the surplus by virtue of his mortgage ; although it is probable he thought he could deprive him of his equitable rights by getting a discharge from the mortgagor for such surplus. And the registry of the mortgage was a constructive notice to every person dealing with G. B. Gale as the owner of the farm, or as entitled to the surplus monies arising on the sheriff's sale. Again ; as J. Gale was permitted to retain the surplus monies in satisfaction of pre-existing debts merely, he would not be entitled to retain it as against the complainant's specific lien, even if he had neither actual or constructive notice of such lien. (*Coddington* v. *Bay*, 20 *John. Rep.* 637.) And the surplus monies in this case never having been paid by the purchaser, they are an equitable lien upon the land, in the hands of J. Gale, to the extent of the complainant's mortgage.

The defendant, J. Gale, has no legal or equitable claim to have the encumbrances on the farm, which were prior to the judgment under which he purchased, deducted from the amount of his bid. He knew of the existence of the Westervelt mortgage, and was himself the owner of the Bailey judgment at the time of the sale. He therefore bid with the full knowledge that the land in the hands of the purchaser would be liable for the payment of those encumbrances. The deputy who sold the property swears he thinks that J. Gale supposed the prior encumbrances were to be deducted from the amount of his bid. But the facts testified to by this witness show that J. Gale himself did not so understand it ; for, at

the time he was bidding on the farm, he said there was a mortgage in New-York of about $1500, which he should have to pay off. This was undoubtedly said to prevent others from running up the property ; and is wholly inconsistent with the idea that he supposed the purchaser was to have the amount of the mortgage deducted from his bid. And the certificate of sale, executed by the sheriff and filed in the clerk's office, is conclusive to show that at the time of the sale he did not put up the property for sale upon the condition that the prior encumbrances were to be paid out of the purchase money ; as the certificate was given for the whole amount bid, leaving the prior encumbrances a lien upon the premises, to be paid by any creditor who might wish to redeem, in addition to the $3100 mentioned in the sheriff's certificate. The giving such a certificate would be a fraud upon creditors having a right to redeem, if the sheriff did in fact sell the property upon the condition of having the prior encumbrances paid out of the purchase money. The certificate is the only legal evidence, which has been given in the present case, as to the terms of the sale, or the actual amount of the bid. And the sheriff's present supposition as to what the purchaser then thought, cannot now be received to falsify his official certificate, given at the time of the sale. If the farm was put up for sale on the condition that the prior encumbrances were to be paid out of the purchase money, Horton and Dunning, who were bidders, would undoubtedly have recollected the fact ; as it was out of the usual course on such sales. The defendants did probably suppose they could so manage in relation to the surplus monies as to defeat the complainant's equitable right to have his mortgage satisfied out of the same. But from the evidence in the case, I do not believe J. Gale bid upon the farm under the supposition that the purchaser was to take it discharged of the previous liens, or that they were to be paid out of the purchase money bid on the sale.

There must be a decree in favor of the complainant, declaring the amount due on his mortgage to be a specific lien upon the surplus of the bid at the sheriff's sale, after deducting from the amount of the bid the balance of the execution

1834.

Trustees of
Watertown.
v.
Cowen.

which had not been satisfied by the sale of the personal estate ; and that the purchase money, to the extent of the complainant's lien thereon, not being paid or otherwise secured, it is an equitable lien upon the farm in the hands of the defendant J. Gale, and is entitled to a preference in payment over the debts due from G. B. Gale to J. Gale, which were neither a specific or a general lien upon the farm at the date of the complainant's mortgage. It must be referred to a master to compute the amount due to the complainant for principal and interest on his mortgage ; and the defendants must pay the amount reported due, and the interest thereof, within twenty days after the confirmation of the master's report, together with the costs of the complainant in this suit. And in default of such payment, the farm, or so much thereof as may be necessary to pay the amount reported due, with interest and costs, may be sold by a master for that purpose.