## WILSON *v.* TOWLE, TUTTLE *& als.*

If an answer in chancery be not sworn to, its effect is that of a pleading only, and the complainant is simply put to prove the facts alleged in his bill.

Where real estate is conveyed to the grantee and his successors in trust, with no specific power to appoint a successor, such power cannot be legally exercised by the grantee.

If such trustee decline to act, or die, the court, upon application, will appoint a successor.

It is a settled principle in equity that a trust shall not fail for the want of a trustee ; and whatever may be done by the parties interested during the vacancy in a trusteeship, consistent with the trust, may be upheld by the court.

IN EQUITY. The bill states the following case :   On the 1st day of September, 1814, George W. Ayers purchased of Daniel and John Marden, for the consideration of $300, a house and

lot known as number six, on Anthony street, in Portsmouth. In October, 1823, Ayers married Eunice Wilson, the mother of the complainant. At the time of the marriage she had about $350, which, with $550 belonging to Ayers, was taken and expended in enlarging, repairing and furnishing the house; in which they continued to reside till about the time of their deaths.

That on the 1st day of September, 1849, Ayers and wife, being then old and infirm, and desirous of securing to themselves such support as they might respectively need in the decline of life, out of said house and land, and to secure the remainder to their daughter, Ann Elizabeth Tuttle, the wife of Peter H. Tuttle, and their children, in consideration that the complainant had advanced, and agreed to advance, from time to time, such sums of money as they, or either of them, should need for their support, agreed that Ayers should convey, and he did thereupon convey to Rufus Kittredge, of Portsmouth, since deceased, said house and land, in trust, (among other things,) to sell or mortgage the same, if in his judgment it should be necessary for the support of Ayers and wife. That at the delivery of the deed it was agreed by Ayers and wife, and Kittredge and the complainant, that Kittredge should hold the house and land in trust, to pay such advances as the complainant had made or might make for the support of Ayers and wife, or either of them.

That Kittredge held the trust until the 25th day of November, 1851, when, being sick, he declined further to act, and released his trust to Ayers and wife, by deed of that date.

That the complainant, residing in Buffalo, New-York, and not being able personally to provide for the comfort of his mother and her husband, procured the services of his relative, Joel Wilson, who resided near them, to make provision for their comfortable support, and to pay for the same on the account of the complainant. That from time to time after the 1st of September, 1849, and before the 3d day of January, 1854, in pursuance of said agreement, he remitted to Joel, to pay for said expenditures, the sum of $391, all of which was expended by him for the support of Ayers and wife, and for which Joel took

the notes of Ayers in his own name, secured by mortgages of the premises, and subsequently assigned them to the complainant. That in addition to the sum of $391, the complainant has paid said Joel Wilson $25, for his services in looking after the affairs and providing for the comfort of Ayers and wife.

That Kittredge, and Ayers and his wife, have all deceased, and that Mr. Towle, one of the defendants, was appointed by the Superior Court trustee in the place and as the successor of Kittredge.

That the complainant has applied to Towle to repay the money advanced for the support of Ayers and wife, or to sell the house and land, and apply the proceeds according to the terms of the trust, or to appropriate the rents and income of the premises to the payment of the advances made by the complainant, or to let the complainant into possession for the purpose of foreclosing the mortgages held by him, as aforesaid. But that he has refused to comply with any of the requests, and claims to hold the premises in trust for Tuttle and wife, and their children.

The bill prays that an account may be taken of what is due to the complainant from the trustee, for principal and interest, for money advanced by him to support said Ayers and wife, and that the defendants may each and all be decreed to pay to the complainant what may be found due him on taking such account, together with costs ; or, in default thereof, that they, and all claiming under them, may be foreclosed of and from all rights and equity of redemption to said premises, mortgaged as aforesaid. Or that Towle, the trustee, may be compelled by the order and decree of the court to sell the premises, and pay such amount as may be found due to the complainant upon the account being taken. There is also a prayer for general relief.

The defendants, in their answers, admit the conveyance of the premises by Ayers to Kittredge, as trustee, on the first day of September, 1849, for the uses and purposes set forth in the deed ; and that Kittredge accepted the trust, and acted under it till November, 1851, when he undertook to decline, and made the conveyance to Ayers and wife.

They admit, also, that Towle was appointed by the . court, trustee of the property, as the successor of Kittredge.

They deny that the complainant advanced money for the support of Ayers and wife, or that there was any agreement made to that effect; and they deny, generally, all the other material allegations in the bill.

Neither of the answers are sworn to.

The evidence, so far as necessary, will be stated in the opinion of the court.

*Hackett,* for the complainant, took the following positions.

1. The deed of Rufus Kittredge, November 25, 1851, had no effect, and was intended to have no effect except the relinquishment by him of the trust. The trust itself continued. Whoever took the estate took it subject to the trust. The trust existed independently of the trustee. The money was advanced by the complainant on the security which . the trust furnished, and in fulfillment of his agreement, and in good faith, for the comfort and support of Ayers and his wife; and the trustee, Towle, is bound to recognize the claim and pay it.

2. It is a settled principle in equity, that a trust shall never fail for the want of a proper trustee. Many trusts are created without appointing a trustee. If Wilson's advances were proper to have been made under the circumstances, (and no question is made on that head,) Towle is as much bound to pay them as if he had contracted for them. He is the agent by and through which the court in this case executes these trust duties and powers. He has no powers aside from or independent of his duties. Towle is bound by the acts of his predecessor within the scope of the trust; or, more accurately speaking, such acts are, *pro tanto,* an execution of the trust, and Ayers was as clearly Towle's predecessor, as trustee, as Kittredge was. 2 Story's Eq. Com. 319, 320, sec. 1059.

3. My next position is, that Tuttle and his wife not only assented to the trust, but have ratified the acts done under it, including the acts of Ayers as trustee. Tuttle gave up the deed

which he held of the house, for the express purpose of affording the complainant security upon the house for what he had advanced, and what he saw the situation of Ayers and his wife required should be advanced. Thus, at the beginning, and at the end, when the money had all been advanced, the notes and mortgages given by Ayers, both Tuttle and his wife recognized the legality of the notes, and agreed that they should be paid out of the first money arising from the sale of the house.

4. This trust was not in Kittredge personally, but was a trust independent of persons, and contemplated a successor to Kittredge. His release to Ayers and wife did not extinguish the trust nor alter the complainant's right. Ayers was trustee in place of Kittredge, and any debt which he contracted within the scope of the trust, bound the trust property, and binds his successor. 2 Story's Eq. Com. 240, sec. 976.

5. If the trust was held to be restricted within the limits claimed in the argumentative answers of the defendants, the result must be the same as if it were allowed to operate as I claim the parties intended. If the trust was for a life estate in Ayers and wife, with remainder to the son-in-law and his wife, &c., the conveyance as to this complainant would be void, for he then was and ever since has been a creditor, and the conveyance, as between Ayers & Tuttle & als., was without consideration.

6. Finally, I claim that Ayers and his wife, being sick and infirm, he created a trust by which this property was charged with their comfortable support for life, remainder to their child, her husband and children; and that this object sufficiently appears from the deed and evidence to enable a court of equity to execute it. Whoever holds this property, not being a *bonâ fide* purchaser without notice, holds it as trustee to pay this debt.

If by any possibility this position can be overthrown, I claim that this conveyance, if not made, among other things, for the purpose of securing the advances made and to be made by the complainant, was made in derogation of his rights as a creditor, and was as to him fraudulent; and that Wilson being a *bonâ fide* creditor, not only the mortgages of Ayers for Wilson's benefit

were and are valid, but that Towle holds this property in trust for the benefit of Wilson as a creditor of Ayers.

*Towle, pro se,* and *Goodall,* for the defendants.

George Ayers held said land as trustee of his wife, he knowing and agreeing to the whole matter. Leonard Wilson also well knew that it was so held for Eunice Ayers and her heirs.

The plaintiff's allegation that after advances were made or any agreement entered into at the time the deed to Kittredge was made are disproved by the testimony.

The papers made in 1849 tend to contradict any such agreement. All the papers, evidences and doings show that there was no such agreement, and the defendants deny any such. We say the trust deed cannot be contradicted by parol testimony in this way, even if it were clear and to the point. When the parties reduce the matter to writing which they agree to, the writing is the evidence and the only evidence.

As to the plaintiff's second position, we say: Wilson did not advance the money for support necessary to be furnished according to the trust deed, but he advanced to pay bills contracted by Ayes on his own credit.

As to third position, we say Ayres was attempting to sell the land at auction. Tuttle and wife both thought that Kittredge's deed back to Ayers re-conveyed to Ayers all the title, so that he could sell as Kittredge could. They so thinking, what they said was under a mistaken view.

The plaintiff, in the fourth place, says that Ayres was trustee in place of Kittredge. We say not so. 1 Greenl. Cruise 433, 434.

Even if it were true, Ayres and wife, if any body, were the trustees, and the deed by Ayers alone conveyed no title.

The fifth position is bad, as we think, for various reasons. Although he might be creditor to the amount of $150, by an old debt, (which we deny,) he got Tuttle to give up his claim and have this trust deed given; and knowing all the transaction, and agreeing to it, it is a fraud in him now to set up the mort-

gage titles, obtained behind Tuttle's back, against the trust deed agreed to by him.

Wilson is not a creditor in such a light that it lies in his power to contradict the trust deed.

Again, the plaintiff's remedy is at common law, and not in chancery. The plaintiff has entirely failed to prove any rights in law or equity, and the equity is all with us to have the money of Eunice Ayers go where it was to go, to her heirs.

The defendants cite *Leavitt* v. *Beirne*, 21 Conn. 1; *Fay* v. *Fay*, 1 Cush. 94; *Farrar* v. *Farrar*, 4 N. H. 191; 4 Greenl. Cruise 441, note.

EASTMAN, J. The answers of the defendants being without oath, their effect is merely that of a pleading, and to simply put the complainant to the necessity of proving the facts alleged in the bill. *Bartlett* v. *Gale*, 4 Paige 503; *Bulkley* v. *Van Wyck*, 5 Paige 536; 2 Danl. Ch. Prac. 984, 985, notes.

They are not evidence in favor of the defendants for any purpose; and, in arriving at the facts, we are only to consider the evidence of the case as presented by the parties, connected with the admissions, as set forth in the answers; and from these the following facts appear :

On the first day of September, 1814, Daniel and John Marden, for the consideration of $300, conveyed the premises described in the bill to George W. Ayers. In October, 1823, Ayers married Eunice Wilson, the mother of the complainant. On the 28th day of June, 1834, Ayers mortgaged the premises to the complainant, to secure the payment of three promissory notes, payable to the complainant, or order, on demand; one for $280, dated June 10, 1833; one for $350, dated January 4, 1834; and one for $73,57, dated May 1, 1834.

On the 28th day of December, 1838, the complainant gave a quitclaim deed to Ayers of the premises, for the consideration of $700, stating that they were the same that were mortgaged to him on the 28th day of June, 1834.

On the 14th day of July, 1849, Ayers, in consideration of

$800, conveyed the premises to Anne Elizabeth Tuttle, the wife of Peter H. Tuttle, and daughter of Ayers and wife, and on the 28th of August following, Anne Elizabeth Tuttle and her husband, for the same consideration, made a re-conveyance to Ayers.

There is no competent evidence to impeach any of those conveyances, or to show that they were of a character different from what they purport to be, except the two last. As to both of those the evidence tends to show that the consideration stated was not paid. But as they leave the title to the property where it was before they were made, it is not material to go into the inquiry of their consideration.

We find, then, that on the first day of September, 1849, Ayers was the owner of the property, in which his wife had a right of dower. There are statements in the bill and answers alleging that she had advanced money towards the premises; but as the parties are not agreed in the matter, and there is no evidence upon the point, we lay it out of the case.

On the first day of September, 1849, Ayers conveyed the premises to Rufus Kittredge, "To have and to hold the same to him, the said Kittredge and his successors, to the following named uses, trusts and purposes, to wit: first, to the use and benefit of me, the said George W. Ayers and my wife Eunice Ayers, during our joint natural lives, and the natural life of the survivor of us; and then, second, to the use and benefit of Peter H. Tuttle and his wife Anne Elizabeth Tuttle, during the terms of their natural lives, and the natural life of the survivor of them, and then to be conveyed to the children of the said Anne Elizabeth, then alive, or the descendants of such of them as may have deceased, in equal parts, according to the existing laws of distribution of intestate estates in New-Hampshire." The deed contains full covenants of warranty of title to the trustee and his successors, but there is no provision for a perpetuation or transfer of the trust, by Kittredge, or any other one. The deed, however, contains this provision: "It being understood and agreed that said Kittredge, or his successor in said trust, is empowered to sell or mortgage any part or the whole of said premises, if it shall in his

judgment be necessary to support me and my wife, the said Eunice Ayers." At the time this deed was made, Ayers was not in debt except a note to the complainant for $150, which the evidence tends to show had been given for money advanced for the support of Ayers and wife. The deed is stated to be for the consideration of $800, but it does not appear that this or any other sum was paid by Kittredge.

On the 25th day of November, 1851, Kittredge, for the consideration of one dollar, conveyed the premises to Ayers and wife for life, remainder to Anne Elizabeth Tuttle for life, and remainder to her children; the deed containing this clause : " I, the said Rufus Kittredge, intending simply to release my control over said premises (without in any manner interfering with the objects of said trust,) in declining to accept the trust intended to be imposed upon me by said deed."

After this deed was made, and before the death of Mrs. Ayers, which took place in August, 1854, the complainant paid bills for the support of Ayers and wife to the amount of $200. Mrs. Ayers was quite feeble, and required a nurse to attend her. This money was advanced from time to time, and paid out through Joel Wilson, a cousin of the complainant, to various individuals, for the expenses of the family. Joel Wilson took a note of Ayers, running to himself, on the 27th of November, 1852, for the money advanced up to that time, and also for the $150 note, which was then given up, and Ayers gave a mortgage of the premises to Wilson of that date, to secure this note. On the first day of June, 1854, Ayers gave Joel Wilson another note for $114, for various sums paid subsequent to the date of the former note, and also another mortgage to secure its payment. These mortgages Joel Wilson afterwards assigned to the complainant, and he now holds them.

In July, 1855, Mr. Towle was appointed by the court trustee of the property, as the successor of Kittredge, and in December, 1855, Ayers died.

There is evidence tending to show that a short time prior to the execution of the deed to Kittredge, Ayers agreed that the

note of $150, due the complainant, should be paid by Kittredge out of the income or avails of the trust property ; but it is not shown that Kittredge was a party to the arrangement, and there is no specific provision to that effect in the deed of trust.

Such are the leading facts, as proved. The other matters stated in the bill and answers are unsustained by proof.

For the purposes of the decision it is not necessary or material to go back of the conveyance to Kittredge, on the first day of September, 1849. On that day the title was perfect in Ayers, and the conveyance to Kittredge was valid for the objects stated, but it could not cut off existing debts. So far as they would be affected, it would be a fraud in law. This is familiar doctrine.

The complainant's debt for $150, which existed at that time, remained a good claim against Ayers, and could have been enforced by attachment upon this estate, notwithstanding the deed to Kittredge. That debt has never been paid, and to that extent the complainant may succeed, if this is the proper proceeding by which to do it.

The deed from Kittredge to Ayers and wife, in November, 1851, was a mere nullity. The original instrument, creating the trust, gave him no power to appoint another in his stead, or to name his successor, and, without such a clause in the deed to him, the power could not be legally exercised. *Bailey* v. *Mansel*, 4 Maddock 226 ; 2 Daniel's Ch. Prac. 1447.

Kittredge might have declined to act, and then the court, upon application, would have appointed a successor. When a trustee is dead, or declines to accept the trust, a court of equity will fill the vacancy. 2 Danl. Ch. Prac. 1446 ; for it is a settled principle in equity that a trust shall never fail for the want of a proper trustee. 2 Story's Com. on Eq., secs. 976, 1059 ; Co. Litt. 290, *b*.

As the deed of Kittredge to Ayers and wife conveyed nothing, so the mortgages of Ayers to secure the notes to Wilson, so far as founded upon any title derived from Kittredge, would convey nothing. After the deed to Kittredge, the title was in him, as trustee, until his death ; and afterwards in Towle as his successor

by the appointment of the court. Towle took the property charged with the same trusts, and having the same powers as those contained in the original deed to Kittredge. From the decease of Kittredge till the appointment of Towle, no one was authorized to convey the premises; but the trust did not become extinct for the want of a trustee. It existed independent of the trustee. Co. Litt. 290, b.; 2 Story's Com. on Eq., sec. 1059; *McCartee* v. *Orphan Asylum Soc.*, 9 Cowen 437. And whatever was done during the vacancy in the trusteeship consistent with the trust, may be upheld.

According to the terms of the original deed to Kittredge, the property was to be held in the first place for the use and benefit of Ayers and wife during their natural lives; and Kittredge and his successors were empowered to sell or mortgage any part or the whole of the premises, if in their judgment it should be necessary, to support Ayers or his wife. During the years 1852, '53 and '54, the complainant furnished some two hundred dollars in aid of the support of Ayers and wife, they requesting it to be done, and standing in need of assistance. It was done, too, with the supposition that Ayers and his wife were at the time trustees of the property, by virtue of the conveyance from Kittredge to them. The object of the trust was thus being carried out by the complainant, although there was at the time no legally appointed trustee to authorize the expenditure. As, however, the advances went for the benefit of the *cestui que trust*, according to the intent of the original conveyance, it would seem to be but equitable that they should be a charge upon the trust property, and that the present trustee should pay the same out of the income and rents; or, if necessary, sell a part of the property, to cancel the demand; unless Tuttle and wife, who are interested in the remainder, will pay the amount.

As to the $150, the complainant could attach the property, and thus obtain a lien upon the same, so as to maintain a bill for the removal of the trust title, and thereby secure the debt. *Tappan* v. *Evans*, 11 N. H. 311; *Kittredge* v. *Warren*, 14 N. H. 509; *Kittredge* v. *Emerson*, 15 N. H. 227; *Stone* v. *Anderson*,

6 Foster (26 N. H.) 506. Under the statute of 27 Elizabeth, chap. 4, Ayers might perhaps also mortgage the property, to secure a *bonâ fide* debt existing at the time of the conveyance to Kittredge.   4 Kent's Com. 462.

But can this bill be maintained against the trustee for this amount, independent of such rights ?   We think it may be.   The consideration of this debt was money advanced for the assistance and support of Ayers and wife, and intended and agreed by Ayers to be paid out of the trust property.   After the decease of Kittredge, the amount was included by Ayers in a note with other money, paid for the support of himself and wife, and the debt was thus again recognized as *bonâ fide*.   No fraud appears to have been intended by Ayers in making the trust deed, and it was undoubtedly supposed by him that the trustee would have the power to pay the note.   We think, therefore, that we may well enough hold that the trustee took the property charged with the payment of this debt ; not as a formal, legal incumbrance upon the premises, but as a debt that could not only be enforced against them, in the manner already stated, but should be allowed in this proceeding.   The direction of trust estates falls peculiarly within the jurisdiction of a court of equity, both by statute and by general equity powers, of which this court as a court of equity is possessed ; and to turn the complainant over to other and different remedies would be an injury to the estate, and to all parties interested.

Our conclusion, therefore, is, that the trustee should be ordered to pay this sum, as well as the other, and that a decree should be made in favor of the complainant, for the full amount paid by him.