## WILLIAM BEACH LAWRENCE v. RICHARD M. STAIGG.

It is the aim of a court of equity, in giving relief for a mistake, to put the parties, as nearly as possible, in the situation they would have been in but for the mistake.

Where it was shown, that in computing the purchase price of a platted and bounded lot of land, purchased at auction for 5¼ cents per foot, the number of feet was, by mutual mistake, assumed to be less by about twelve thousand feet than it really was, and payment therefor and conveyance were made accordingly; *Held*, that the sale be wholly rescinded, unless the purchaser fully compensate the seller in conformity with the terms of sale, for the whole number of feet actually bought and conveyed.

A motion by a defendant for leave to make oath to an Answer, which he had omitted to swear to by reason of a waiver of the oath in the complainant's bill, (whether grantable or not, if earlier made,) cannot be entertained after the cause has once been fully tried and determined, and a rehearing thereof been ordered.

Lawrence *v.* Staigg.

Though a motion placed on file reflect unnecessarily upon the motives of a party, and portions thereof might properly be ordered to be expunged, it nevertheless may not be so grossly scandalous as to warrant an imposition of costs upon the solicitor in fault, especially if the motion, for another reason, shall have been dismissed with costs.

RE-HEARING of a suit in equity, for rescission of a contract of sale of lands, upon the ground of mutual mistake.

The case, at the first trial, was submitted to the Court on printed arguments, and the opinion of the Court given thereon, at its August term, 1865. For a reason that will be apparent to the reader, a full report of the case, as originally tried and determined, will here be first presented.

The material facts in the case, and the scope and purpose of the bill, are fully stated in the opening paragraph of the opinion of the Chief Justice, *infra.*

*Sheffield, for the complainant;—*

I.   There was a mutual and material error; but if the error was only unilateral, the complainant is equally entitled to relief. *Gilmore* v. *Morgan,* 2 A. K. Marshall, 56; *Whaley* v. *Eliott,* 1 Ib. 344.

II.   Equity has concurrent jurisdiction with courts of law, in cases of mistake, whether of both or one of the parties. 1 Story's Eq. §§ 110–183; *Boyce's Executors* v. *Grundy,* 3 Peters, 210; Adams's Eq. 85; *Allen* v. *Browne,* 3 R. I. 397; 3 Parsons on Contracts, 348; Adams's Eq. 175–193; Fry on Specific Perf. 308; *Culverly* v. *Williams,* 1 Vesey, jr. 210; Sugden on Vendors, 373.

III.   There was no negligence to be imputed to the complainant. 1 Story's Eq. § 140; *Kelly* v. *Soleri,* 9 Mee. & Welsby, 54; *Lucas* v. *Warswick,* 1 Mood. & Rob. 293; *Bell* v. *Gardner,* 4 Manning & Granger, 11; Fry on Specific Perf. 302, and cases cited; *Jenckes* v. *Fritz,* 7 Sargent & Watts, 201.

IV.   If there is any material error in the quantity of land conveyed, the appropriate remedy is to be found in equity, where all the circumstances may be inquired into. I Hilliard on Vendors, 313. Executed contracts or sales actually completed, as well as executory contracts, are relieved against in equity. *Allen* v. *Browne,* 3 R. I. 387; *Watson* v. *Stucker,* 5 Dana,

581; *Gray* v. *Woods*, 4 Blackford, 432 ; 1 Hilliard on Vendors, 9 ; *Gillespie* v. *Moon*, 2 Johnson's Ch. 585 ; *Mortimer* v. *Shortall*, 2 Dr. & War. 363 ; *Patterson* v. *Grover*, 20 Maine, 362.

V.   Equity will set aside a sale for mutual error, though the sale be made in bulk, if the error is material, reference being had to the object for which the land was sold. 1 Story's Eq. § 141 (ed. of 1861); *Belknap* v. *Seabury*, 2 Duer. 570.

VI.   The cases in which courts of equity generally give relief are cases like this, in which the sale has been made by the acre or foot.   *Morris Canal Co.* v. *Emmett*, 9 Paige's Ch. 170 ; *Stebbins* v. *Eddy*, 4 Mason, 414 ; *Whaley* v. *Eliott*, 1 A. K. Marshall, 343 ; 1 Hilliard on Vendors, 313 ; 1 A. K. Marshall, 344.

VII.   This case is distinguishable from one where the difference in quantity would not have varied the purchase in the view of either party.   *Joliffe* v. *Hote*, 1 Cal. 281.

VIII.   As to the remedy the rule is, in a case of mistake, to place the parties to the contract in the same condition in which they would have been if the contract had not been made.   Sugden on Vendors, 373 ; *Bellows* v. *Stone*, 14 N. H. 175 ; *Daniel* v. *Mitchell*, 1 Story, 190 ; *Prince* v. *North*, 2 Young & Collier, 627 ; Hilliard on Vendors, 313 ; *Glover* v. *Smith*, 1 Dessass. 433 ; *Mortimer* v. *Shortale*, 2 Drury & Warren, 373 ; *Gillespie* v. *Moon*, 2 Johnson's Ch. 585.

IX.   If there is not a decree for rescission of the contract, and reconveyance, which would avoid all embarrassments, place the parties in their original position and fully indemnify the defendant, the only mode of relief would be by a pecuniary compensation for the excess, or its reconveyance, for neither of which has the defendant asked.

*Parsons*, (*with whom was* T. A. *Jenckes*,) *for defendant:*—

I.   There can be no rescission of the contract between Lawrence and Staigg, because there has been no mistake or ignorance essential to the character of that contract or material to it—the mistake or ignorance alleged being mistake or ignorance of fact. 1 Story's Eq. §§ 162, 172 ; 1 Hilliard on Vendors, 308, notes and cases cited ; 1 Sugden on Vendors, 182 and 214, notes and cases cited.   As the answer denies the mistake, the complainant must

conclusively prove it. The ignorance or mistake set up, so far from being "mutual," is not in any equitable sense even "unilateral." Further: "If by reasonable diligence a party could obtain knowledge of the fact, equity will not relieve him." 1 Story's Eq. 167-8; Adams's Eq. 441, and cases cited.

II. The property sold to the defendant was conveyed as a specific lot,—"a certain tract or parcel of land." It was also sold by fixed boundaries. Hence, though there may have been an error in the statement of the number of feet, the contract cannot be rescinded. 1 Story's Eq. 163, 166, 222; 1 Hilliard on Vendors, 309; *Stebbins* v. *Eddy*, 4 Mason, 420, and cases cited; *Smith* v. *Evans*, 6 Binney, 102. Relief in the form of compensation the complainant cannot have, because, first, he has a full, complete and adequate remedy at law, on the contract of sale, as the defendant, in his answer, insists. 1 Story's Eq. n. 2, p. 167. Secondly, the bill does not pray for such relief. Its prayer is simply for a rescission and reconveyance.

AMES, C. J. The facts stated and proved in this case are, that the plaintiff arranged for sale and sold, through the agency of Alfred Smith, a well known real estate agent in Newport, a portion of a certain farm belonging to the plaintiff, called the Ochre Point Farm, in said Newport. That Smith, who had the sole direction and control of said sale, in the summer of 1862, employed a surveyor by the name of Samuel S. Minot, reputed for his skill, to survey the portion of said farm to be sold into lots, and measure and plot the same, to be sold by one Swinburn, by auction. That amongst the lots so measured and plotted was lot No. 1, on the plot of said lots, set down as containing 43,918 feet to high water, by mistake of said surveyor, when, in truth and in fact, said lot contained, in its true area to high water, 55,680 feet. That said lot was sold by auction, through mistake, to the defendant, and by him bought, as containing said area of 43,918 feet, instead of its true area of 55,680 feet, at five and one-quarter cents per square foot, and upon receiving a conveyance from the plaintiff of said lot, the defendant paid his said agent, Smith, the sum of $755.69, and delivered to him a mortgage for the payment of a note of $1,550, in three years, with interest, the area and

price of said lot being adjusted by and according to said mistake. The bill prays that the sale, made as above, by mutual mistake as to the area, may be rescinded; the consideration being returned to the defendant, and the land reconveyed by him to the plaintiff.

We are clearly of opinion that this equity demanded of the defendant is due, under the facts, to the plaintiff, there being no doubt that the sale and conveyance were made under a mutual mistake, as to the area sold, and the price justly to be computed as the price of the lot. No fault or neglect in the matter is fairly imputable to the plaintiff, who employed an agent to arrange the sale of his farm, of skill and good repute. This agent, for the purpose of surveying, measuring and plotting the lots to be sold, including lot No. 1, sold under the above mistake to the defendant, employed a skilful civil engineer, who, in performing this duty, fell into the mistake above stated, which has caused the parties to contract and execute their contract of sale, contrary to the design and against right, as due to and from both parties. The sale, like that in *Leslie* v. *Thompson*, 9 Hare, 268, was made according to the report of a surveyor, which was incorrect, and the contract was, as in that case, entered into under a mistaken conception of the amount of the property comprised in the particulars embraced in the report. There is no pretence, under the facts proved, that the plaintiff designed or expected to sell lot No. 1 in the mass or lump, or that the defendant designed or expected to buy it in that mode. The designation of the number of feet in the tract, with the price per foot at which it was sold, negatives any such presumption. In the exercise of its jurisdiction over the subject of such a mistake, the Court will require, what it finds in this case, full and satisfactory proof of the mistake, and will be of little value, if it can suppress only positive frauds, and leave a material mistake, like the one in this case, innocently made, to work an intolerable mischief, contrary to the intention of the parties. As we have already had occasion to repeat, in the language of Judge Story, "It would be to allow an act originating in innocence to operate ultimately as a fraud, by enabling the party who receives the benefit of the mistake to resist the claims of justice, under the shelter of a rule

framed to promote it." 1 Story's Eq. Jurisp. 15, 155, 156; *Allen* v. *Browne*, 6 R. I. Rep. 396–7.

According to the well settled principles of equity jurisprudence applicable to such a subject, we must rescind the contract and sale entered into and arranged by mistake in a substantial particular, and which, if suffered to remain, will work a fraud upon the plaintiff, unless the same be conformed to the truth and fact in the particular complained of. Let a decree be entered up rescinding the above sale as entered into by mutual mistake, the plaintiff returning the consideration by him received from the defendant, and receiving from him a full release in consideration thereof and of all loss and expense incurred by him from the plaintiff in said lot No. 1, but let the title of the defendant in No. 1 remain without such rescission, provided he shall forthwith pay, as the master may report, the cash sum due, and deliver the additional note secured by mortgage upon the property sold to the defendant, calculating the amount of such additional sum, adjusting the same and the amount of such additional note and mortgage to the true price, free from the above mistake; let Francis B. Peckham, Jr., Esq., be appointed a master in this case to compute the above amounts, and fix the time for adjusting the payment of the same between the parties, as he shall find the facts in this case may require, and report upon the same to the Court.

The mistake made in the contract and conveyance being apparent, and it being proved by Alfred Smith that, about a year after the contract and conveyance, it was discovered, by him, upon the suggestion of William B. Lawrence, Jr., and that having it confirmed by Mr. Minot, the surveyor, he informed the defendant of it, which information is admitted by the defendant to have been given to him, and the defendant having thereupon promised to correct it, and it appearing, notwithstanding, that this has never been done by him, our decree against him must be with costs.

AFTER the delivery of this opinion, and after notice had been given by the complainant, that he intended applying to the Court

for a modification of its order, by making the rescission unconditional, the complainant learned, that while the case was under advisement by the Court, a communication in writing was made to one or more of the Judges, by the defendant's counsel, without the consent or knowledge of either the complainant or his solicitor. The bill of the complainant contained an express waiver of the defendant's oath to his answer, and he accordingly had filed an answer not under oath. Both the defendant and his counsel, it would seem, had, throughout the trial, assumed that the answer, though not under oath, was entitled to consideration as *evidence*, while the complainant and his counsel regarded it but as a *pleading*. The complainant, in his closing argument, indicated his views on this subject, by saying, " Did even the answer purport a denial of the mistake, unsupported, as it is, by any testimony, such denial could not avail the defendant, as there is an express waiver of an answer under oath. The answer is not sworn to ; but if it had been, it would, under the rules of the Court, have only been regarded as a pleading." And again, he said, " It might be sufficient to remind the Court, that an averment in an unsworn answer, unsupported by any evidence, can, in no possible sense, be evidence in a suit." The defendant's counsel thereupon addressed to the Court the communication above referred to, in which they said : " We deem it proper, on behalf of our client, to call the attention of the Court to a statement appearing on page fifth of the complainant's closing argument, last paragraph, where the defendant's answer in this suit is called ' an unsworn answer.' " And then, after quoting from the bill the clause waiving an oath to the defendant's answer, they added : " It would hardly be respectful to this Court to cite authorities upon subjects so elementary as the effect of an answer in equity, how far an answer is evidence, and how a Court will treat it. The matter of the answer aforesaid is incidentally referred to in the complainant's closing argument, page four, top paragraph."

Of this irregularity, or breach of professional etiquette, complaint was made to the Court at its October session, 1865, in Providence, when, for satisfactory reasons shown, or by consent,

Lawrence v. Staigg.

it was ordered, That all proceedings in the suit, subsequent to setting down the same for argument, be deemed null and void, and that the cause be placed on the calendar for the March term, at Newport, and then be heard in its order.

Subsequently the defendant filed in the clerk's office the following motion :—

"SUPREME COURT.

"*Newport, ss.*                                                                  *In Equity.*

"W. BEACH LAWRENCE v. RICHARD M. STAIGG.

"The defendant in the above entitled suit moves the Court that the copy of his answer to the bill of complaint, duly certified by the clerk of this Court to be a correct copy of the original, which copy, accompanied by his affidavit verifying the same, sworn to before Charles B. G. Adams, a commissioner for Rhode Island, residing in the city of Boston, is filed with this motion, may be taken and received as and for his answer in said suit, duly verified by his oath.

"And he states, as his reason for this motion, the following : That, by the express language of the bill of complaint, the necessity of an answer under oath was directly waived. That relying on said waiver and believing the same to have been made in good faith, the defendant filed his answer in said suit, signing but not swearing to the same. That subsequently the said complainant has sought to take advantage, notwithstanding his aforesaid express waiver, of the fact that the said answer has not been made under oath, and seems to seek to deprive the defendant of the full benefit of his answer in said suit.

"Therefore he makes this motion, being duly sworn to the truth of said answer."

At this term (March, 1866) the cause was again submitted to the Court, and with it a motion of the complainant, that the motion aforesaid of the defendant be stricken from the files of the Court for scandal, with costs, to be paid by the solicitor. The counsel who, at this term, assumed charge of the cause, respectively adopting, as their own, the arguments of their predecessors, and commending them to the consideration of the

Court, were, respectively, further heard upon the merits of the cause, as well as upon the questions involved in the complainant's motion.

*W. B. Lawrence, pro seipse* :—

I. The defendant's motion, charging the plaintiff with improper motives in waiving the defendant's oath, should be stricken off the files of the Court for scandal, with costs to be paid by the solicitor. 1 Barbour's Chancery Practice, 574; *Powell* v. *Kane*, 5 Paige's Ch. Rep. 267. The scandal of the defendant's motion is put beyond all pretext of apology, by the fact, that the prayer in the bill which is complained of is in accordance with the most approved precedents, and in strict conformity with equity practice. 1 Barbour's Chancery Practice, 36; 1 Hoffman's Chancery Practice, 234, 3d Ib.

II. The motion is frivolous and impertinent. The Court will never, in any case, allow pleadings to be taken off the file, on the application on the part of the defendant, for the purpose of enabling him to correct a mistake in form, where the plaintiff can be at all prejudiced by it. 1 Daniels' Chancery Practice, 786. It is not within any of the provisions, under which, by the 44th rule of this Court, 4 Rhode Island Reports, 571, permission to amend may be granted by the court after replication. The principle that no change can be made in the defendant's answer, unless the plaintiff can be put in the same situation as he would have been if the proposed answer had been originally filed, has been fully recognized by this Court. *Tillinghast, Receiver, &c.* v. *Champlin*, 4 Rhode Island Reports, 135. If the plaintiff had no right to waive the answer under oath, there was no obligation on the part of the defendant, to omit his oath in the answer; and if he had such right, it was wholly immaterial whether the answer was sworn or not.

III. The object of calling for an answer is to serve the purposes of the plaintiff, not of the defendant. 3 Bland's Chancery Rep. 14. Therefore, though in the English Court of Chancery, where an order is required to put in an answer without oath, though it cannot be obtained without the plaintiff's consent, when asked for by the defendant, when it is

applied for on the part of the plaintiff, the defendant's consent is not required. 1 Daniel's Practice, 750 (ed. 1865). Since the law making parties in interest witnesses in suits in law and equity, no motive exists for requiring the oath of the defendant to answers to bills in equity. See Rev. Stat. ch. 187, § 34, p. 454.

IV. That the plaintiff may, at his option, when the bill is for relief, not discovery, waive the defendant's oath, and that, in such case, the answer will only be regarded as a pleading, is now established in every State of the Union, it is believed, where equity proceedings, as distinguished from those at common law, are adopted. In some of the States, as in Massachusetts and Maryland, and as was the case in New York, before the distinctions between law and equity were done away with by their code, the decisions of the Courts are incorporated into the statutes, but in Massachusetts the practice of the Courts preceded, by several years, the statutory enactment. In Connecticut, New Hampshire and Illinois, whose reports have been examined, the practice would seem to rest on the decisions of the Court. *Heart* v. *Corning*, 3 Paige, 569. In Connecticut, the practice of waiving oath and treating answer as a pleading prevailed before 1832, without any statutory provision. *Pomeroy* v. *Marvin*, 2 Paine C. C. Rep. 477. In Massachusetts, the waiver was introduced into the statutes in 1855. It had been recognized, for many years, by the Court, and is to be found among the rules of 1842. See 24 Pickering, 411. The rule there declares that, "when a bill shall be filed other than for discovery only, the plaintiff may waive the necessity of the answer being made on the oath of the defendant, and, in such cases, the answer may be made without oath, and shall have no other or greater force than the bill. No exception for insufficiency can be taken to such answer." In New Hampshire, the rule of Court is the same as in Massachusetts. 1 Daniel's Chancery Practice, 749, n. The code of Maryland (§ 103 of art. 10) provides that it shall not be necessary for any defendant to make an oath to his answer, unless required by the complainant. *Mehaney* v. *Lazier*, 16 Maryland, 73. An oath to an answer may be waived in Illinois. 1 Gilman's Rep. 317.

V. The defendant's oath, if the plaintiff had a right to waive it, would not have availed the defendant, if attached to his answer, and whether he had or had not such right, the defendant might have sworn to the answer *quantum valeat.* *Bartlett* v. *Gale,* 4 Paige, 504; *Moore* v. *Hunter,* 1 Gilman (Ill.) Rep. 317.

VI. The distinctions between an answer without an oath and an answer under oath have ever been recognized in equity, even in those cases in which it has been held that the permission of the Court to waive the oath was necessary. In unsworn answers, exceptions for insufficiency cannot be taken. They deprive the plaintiff of any power to compel the defendant to make them properly responsive to the bill, and the substitution of a sworn answer for an unsworn, if it is to be evidence, would require the withdrawal of all subsequent proceedings to enable the plaintiff to except to it. *Hill* v. *Earl of Bute,* 9 May, 1785 ; see 2 Fowler's Practice of the Court of Exchequer, in Proceedings in Equity, 10 (London, 1817). The Supreme Court of the United States adopt, as a general rule, that an answer not under oath is to be considered merely as a denial of the allegations of the bill analogous to the general issue at law ; so as to put the complainant to the proof of such allegations. *Union Bank of Georgetown* v. *Geary,* 5 Pet.. 99 ; Law, Jurisdiction, &c., of the United States Courts, p. 461, n. to rule 39, Circuit Courts in Equity ; see, also, 1 Daniel's Chancery Practice, by Perkins, 746–750, n. (ed. of 1865) ; Story's Eq. Pleadings, by Redfield (ed. 1865), § 875, c.

VII. It is never competent for a defendant to deprive the *plaintiff* of the benefit of an answer put in without oath. *Curring* v. *Marquis Townshend,* 19 Vesey, 531 ; *Chace* v. *Holmes,* 2 Gray, 433 ; *Brigham* v. *Yeomans,* 10 Cush. 58. If the plaintiff is unwilling to rely upon an answer on oath to the amendments, his only remedy is to dismiss the bill and commence a new suit, in which suit he can waive an answer on oath. *Burras* v. *Tooker,* 4 Paige, 227, 1 H. & H. C. 234, 235 ; *Brigham* v. *Yeomans,* 10 Cush. 58 ; *Chace* v. *Holmes,* 2 Gray, 431.

VIII. The plaintiff is entitled to an absolute rescission of the contract, and a reconveyance, as prayed for in the bill of complaint. *Leslie* v. *Thompson,* 9 Hare, 268, on the authority of

which the opinion of the Court in this case, at the August term, purported to be based. In that case, the eleventh condition of the sale provided, that "if any mistake or error should appear in the description of the property, or any error whatever appeared in the annexed particulars, such mistake or error should not annul the sale; but, except when otherwise provided for by the conditions, a compensation or equivalent should be given or taken, as the case might require, to be settled by referees." In this case, there being no previous stipulation, the bargain having failed through mutual mistake, was at an end, and unconditional rescission is the only remedy. It is not intended to assert that the Court is precluded, in all cases, from giving relief under the general prayer, though there is a special prayer, but this is not a case for so doing. The principle is, that when the plaintiff fails to make such a case as would entitle him to the specific relief claimed, but does make a case which comes within the equity of the general prayer, the Court will grant the relief which the facts show him entitled to. But no case can be found in which, where the plaintiff has made out his claim to the satisfaction of the Court, for the specific relief according to his prayer, as understood both by the plaintiff and defendant, the specific relief has been refused, and a different decree made, founded on the general prayer. 1 Daniel's Chancery Practice, 382–390 (ed. 1865).

*Payne, for defendant:*—

It seems that, in his closing argument, the complainant, for the first time, *let out* his purpose of getting rid of the effect of the defendant's answer. Messrs. Parsons & Jenckes, as was perfectly proper, addressed a note to the Court upon this subject, but by some accident, the copy of this note, which was designed for the complainant's counsel, did not reach him. The decision of the Court was in favor of the complainant; a result with which most litigants would have been contented, but such a course was taken that the case was set down for rehearing upon bill, answer and proofs. We come now to its consideration as to a new case.

I. It seems to me that the complainant has no standing in a court of equity, because, if he had suffered any injury, he had a

complete and adequate and perfect remedy at law. I do not find that this point was considered in the opinion of the Court, pronounced in this case, but it is one of great practical importance. I suppose that the Court do not mean to abolish the distinction between remedies at law and in equity, and if not, then this bill ought to be dismissed with costs for the defendant, if the remedy of the complainant at law was complete and adequate and perfect. This Court, I submit, has practically decided that it was, by finding that the complainant is entitled to no relief if the defendant will pay for the alleged excess of land conveyed to him.

II. The bill adroitly puts the case as if the complainant was proposing to sell, and the defendant was proposing to buy, so many feet of land. But nothing can be further from the fact. The complainant was proposing to sell certain defined and platted lots upon his Ochre Point Farm. The defendant was proposing to buy one of these lots. He knew nothing about the number of feet which it contained, except as they were indicated on the plat, and used them merely as a means of computing the consideration. Neither did the complainant know anything about the number of feet in the lot, except as indicated on the plat, and used them for no purpose but to compute the consideration. The lot was struck off to the defendant for a sum of money equal to five and one-quarter cents for each square foot, indicated upon the plat, and the complainant was satisfied with what he was to get for that lot, and proceeded to sell others. There was no mistake whatever. The thing to be sold was a lot visible, defined, set off by metes and bounds. The price to be paid was definite, and ascertainable in a mode understood alike by both parties.

III. The motion for leave to file a sworn answer is a plain case. The complainant had no power to deprive us of the benefit of our answer as evidence by waiving an oath. That can only be done under statute or rule of Court, neither of which exist here. Says Chancellor Walworth : " The *statute* authorizing the complainant to waive an answer under oath has introdued *a new principle* into the system of equity pleading. The provision was incorporated into the revised statutes at my suggestion." *Bur-*

*ras* v. *Looker*, 4 Paige, 227. Says the defendant's counsel in *Chace* v. *Holmes*, 2 Gray, 432 : "The right of the plaintiff to waive the oath of a defendant *is a departure from the principle of equity*, and exists only under the fifth rule of chancery of this court," &c. And the Court sustained the point made upon the rule in their decision. See also 1 Daniel's Ch. Prac. (last ed.) 748, and notes. The "new principle" cannot apply in this State until a statute is passed. "A departure from the principle of equity" cannot be sanctioned here till an additional rule of Court is made. The complainant might consent to waive an answer under oath, which he did. Messrs. Jenckes & Parsons supposed that what he meant was to do what he had the power to do,— receive the answer as evidence without oath ; and not that he was undertaking to do what he could not,—deprive us of the benefit of the answer as evidence. Now that this latter purpose appears, we ask the Court to permit us to defeat it. As to the scandal, &c., the complainant avows and vehemently insists upon the very motive which we impute to him in the motion, *i. e.*, to deprive us of the full benefit of the answer. No wonder the attempt to use the answer as evidence is resisted, for the answer shows that the only equity on which he has framed his bill, to wit, a sale of land by the foot, has no existence in fact. Further than this, the allegations of the answer are sustained by the very evidence which the complainant has adduced.

IV. As all the costs since the delivery of the opinion, in September, 1865, have resulted from the action of the complainant, costs since that time should be awarded to the defendant, if the Court should order the decree to be entered in accordance with the opinion as delivered. But further. This mistake was made by the complainant through his agent the surveyor. We had nothing to do with it. When presented to our notice, we naturally expressed a doubt about it, and said that when satisfied of it we would correct it. The court have found that this was all that we can, in any event, be called upon to do. Until the error was made clear to us, and a demand made upon us for the payment of the price of the surplus land, with which we had neglected and refused to comply, most clearly, it seems to me,

we cannot *equitably* be subjected to costs. The court in decree-ing costs against us may possibly have been influenced by some unsupported statements of the complainant in a former printed argument, that he has made efforts to obtain a settlement. Those efforts, if any, did not lie in the direction of attempting to obtain payment for the surplus land. There is no evidence that they did, and I am authorized by the defendant to say, that never, by the complainant or any agent of his, was a request or a de-mand made of him to pay for the surplus land. It is pretty good evidence of the truth of his statement, that the complain-ant will not now take a decree for the payment of this surplus, even with costs. I ask the very careful attention of the Court to the question of costs, even upon the view which they have taken of the rights of the parties in their opinion, before this rehearing was ordered.

DURFEE, J. The plaintiff in this case, being the owner of the Ochre Point Farm, so called, in Newport, and wishing to sell a portion thereof, employed Alfred Smith, a real estate broker, in Newport, to make the sale; and Smith, in pursuance of his employment, procured the portion intended for sale to be sur-veyed and platted into house or villa lots, with figures inscribed in each lot as platted, to indicate the number of feet it contained. On the 18th of August, 1862, in accordance with previous ad-vertisements, the lots so platted were offered for sale, at public auction, and lot numbered 1 on the plat was struck off to the defendant at five and one-quarter cents per foot. Lot No. 1 purported, on the plat, to contain 43,918 feet, and was conveyed to the plaintiff at a price computed by multiplying those figures by five and one-quarter cents. About a year afterwards the plaintiff discovered that the lot, instead of containing only 43,918, did, in fact, contain 55,680 square feet. He notified the defendant of the error and claimed its correction, which, how-ever, the defendant did not make. At the former hearing, the Court came to the conclusion that the sale was made and the price computed under a mutual mistake in this particular, and decreed a rescission of the conveyance, unless the defendant

would pay for the additional number of feet at the auction price and according to the conditions of the sale.

On a review of the case, we still entertain the opinion that the plaintiff sold and the defendant bought the lot, supposing that the figures on the plat correctly represented the number of feet which the lot contained, or, in other words, under a mutual mistake in that regard. The plaintiff contends that if such is our opinion, we must rescind the conveyance, and that we cannot allow the defendant to keep the lot on payment of an additional *pro rata* compensation, for that that would be to make a new contract for the parties.

We do not take that view of the case. The sale was, we think, understood to be a sale of the entire lot as platted, for a price to be computed at the rate of five and one-quarter cents per square foot on the number of feet in the lot. The mistake was, that both parties supposed the figures on the plat correctly represented the number of feet in the lot, and accordingly computed the price at too small an amount. Now the aim of the Court, in giving relief for a mistake, is, to put the parties, as nearly as possible, in the situation they would have been in but for the mistake; and there can be no doubt that, in this case, that aim will be better accomplished by rectifying the price than by annulling the conveyance. The contract here has been executed, and where the contract has been executed the Court is slow to rescind it, even for causes which would be thought to warrant its rescission had it remained *in fieri. Belknap* v. *Scaley*, 4 Kernan, 143. And, certainly, where the mistake is of such a nature that it can be corrected and justice done the party asking relief by its correction, it would be unreasonable to resort to the more extreme remedy of a rescission. To afford relief in this milder form is not to make a new contract for the parties, but simply to refuse to set aside the contract which they have made for themselves, under a mistake, provided the party profiting by the mistake will do a more perfect equity by correcting the same.

The cases which have been cited by the plaintiff, as showing that rescission is the proper remedy, are cases where another

remedy would not do justice to the party seeking relief. They are, for the most part, suits by purchasers who had been led into purchases of land by mistakes as to its quality or quantity, which, but for such mistakes, they would not have made. Such is the suit of *Belknap* v. *Seeley*, 2 Duer, 570, which is especially relied on by the plaintiff. The suit, in that case, was by the purchaser, and in the Court of Appeals, to which it was finally carried, the rescission decreed by the Superior Court was confirmed, on the ground that the contract was yet executory—that there was a misrepresentation, though not fraudulent, of the quantity of the land, and that the mistake went to the essence of the contract. 4 Kernan, 143. But no case has been cited where a conveyance of land has been set aside at the suit of the vendor for a mistake, when it affected only the price to be received by him, and where it could be rectified by awarding him an additional price.

In the case of *Barnes* v. *Gregory*, 1 Head (Tenn.) R. 230, the plaintiff had sold the defendant a tract of land at $35 per acre, and had conveyed it by deed, describing the same and estimating it to contain thirty acres. The tract did, in fact, contain forty-five acres, and the Court awarded the plaintiff a ratable compensation for the excess over the estimate. In *Horn* v. *Denton*, 2 Sneed (Tenn.) R. 125, a similar remedy was administered in relief of a similar mistake. These cases are in point as precedents for the case before us, and they were, we think, well decided, according to the analogies which govern Courts in administering equitable relief.

We think, therefore, that the decree, in the form in which it was settled in the previous opinion of the Court, ought to be entered in this case, except as to the matter of the costs of this rehearing, which we will reserve for further consideration.

After the rehearing was ordered in this case, the defendant filed a motion for leave to make oath to his answer, which had not been originally sworn to by reason of a waiver of the oath in the plaintiff's bill. We think, however, our decision would have been the same if the answer had been under oath, and that the motion, whether grantable or not if earlier made, comes now

too late to be entertained. We therefore dismiss it with costs to the plaintiff.

The plaintiff objects to the motion of the defendant, for leave to swear to his answer, as scandalous, and asks that it may, for that reason, be stricken from the files of the Court, with costs to be paid by the solicitor who prepared it. The motion does unnecessarily reflect on the motives of the plaintiff, and the offensive portion should be expunged; but as we have already dismissed the motion with costs, we do not think the scandal is so gross as to require us to visit the defendant's solicitor with additional costs.