THE COUNTY OF POLK, for the use of the School Fund,
v. SYPHER *et al.*

1. **Practice: MOTION: SURPLUS.** Contests in relation to surplus arising from sales on execution may be determined upon motion instead of by petition in equity or other action, especially when the facts are undisputed, or are susceptible of being clearly and easily ascertained.

2. —— NEW PARTIES. But when the money has been actually paid over by the sheriff to subsequent execution creditors of the same debtor, such creditors should be brought before the court.

3. —— JUDICIAL SALE: DECREE AND EXECUTION. A decree in foreclosure ordered a sale of so much of the mortgaged premises as should be necessary to satisfy the mortgage debt: a special execution issued commanding the sheriff to expose the entire property to sale, under which it was divided into five parcels which were separately sold, the fifth one after a sum had been realized from the sale of the other four parcels sufficient to satisfy the entire debt: *Held,* That a motion in court by a subsequent lien-holder to apply the surplus thus arising, operated as an affirmance or ratification of the sale, and that on the hearing of the motion the sale would be treated as valid.   *Quere.* 1st. Was the act of the sheriff *under the writ wrongful?*   2d. Whether, if the mortgagor ratifies the sale a subsequent lien-holder can have it set aside ?

4. —— FORECLOSURE: SURPLUS. While the surplus moneys arising from the sale of mortgaged premises in foreclosure, when remaining in the hands of the sheriff, or under the control of the court, belongs to subsequent lien-holders in the order of their priority, and should be so awarded by the court; when the execution does not direct the disposition of such surplus, and the sheriff acting in good faith and without knowledge of subsequent liens, applies the money upon other executions in his hands against the mortgagor, he is not liable therefor to such lien-holders.

*Appeal from Polk District Court.*

MONDAY, DECEMBER 5.

APPLICATION OF SURPLUS PROCEEDS OF SHERIFF'S SALE.
The adversary parties to this proceeding, so far as it is before us, are I. W. Griffith, the sheriff and appellant, and John Sherman, the appellee.   The material facts are these:

The plaintiff, " *The County of Polk*, for the use of the School Fund," brought an action of *foreclosure* against Sypher, the principal debtor, and John Tyler, his surety, making the said Sherman, as well as many other persons, defendants, and alleging that they, Sherman and others, " claim some right, title or interest in, or lien upon, said mortgaged premises by virtue of the lien of certain judgments rendered severally in their favor against the said R. W. Sypher *subsequent* to the execution of the said mortgage." Sherman was served with notice by publication ; and the decree of foreclosure, which was rendered *by default*, August 3d, 1863, recites that he, as well as all the other defendants, was " duly notified of the pendency of the suit." The decree against Sypher and his sureties was for $2,267.60, and $147.95 costs, and " forever barred and cut off all of the interest and equity of redemption " of all of the defendants, including Sherman. It was also ordered that a special execution issue for the sale of the mortgaged property, or so much thereof as should be necessary. The decree made *no provision or order in case there should be any surplus*. It does not appear by the decree that Sherman was a judgment creditor of Sypher, or what his rights were. On the 29th of October, 1863, execution issued on the above decree. It was entitled thus : " *The County of Polk, &c.*, v. *R. W. Sypher et al.*" It commands the sheriff " to expose to sale the following described property, to wit : Lots 5 and 6 in block 35, except," &c. It did not add, " or so much thereof as should be necessary." It was recited in the execution that the judgment was " against said R. W. Sypher and John Tyler." The writ did not contain or mention the name of Sherman. The sale took place under the writ, November 26th, 1863 ; and after satisfying the decree in favor of the county, there remained in the hands of the sheriff the sum of $710, " belonging," so his return says, " to the defendant, R. W. Sypher, which I applied on an execution in my

The County of Polk v. Sypher.

hands for collection (tested November 25th, 1863), in favor of J. B. Tiffin, treasurer of Polk county, Iowa, and against the defendant, R. W. Sypher *et al.*, for $513. There still remaining in my hands $197. I applied it on an execution issued November 26th, 1863, in favor of Cummins, Seaman & Co., and against R. W. Sypher."

It was admitted that the judgment of Sherman was the *next lien* in the order of time to the mortgage foreclosed by the county; that the judgments of Tiffin, treasurer, &c., of Cummins, Seaman & Co., were *junior* to that of Sherman; that the sheriff not only *applied*, but *actually paid over*, the surplus as above to Tiffin and to Cummins, Seaman & Co., *before* Sherman demanded it of him. It is also admitted that the surplus moneys were thus paid over by the sheriff "without any *actual knowledge* of the existence of the judgment of the said Sherman otherwise than could be acquired from the executions, and before this motion was filed, or any notice thereof was served upon the said sheriff or others." Tiffin and Cummins, Seaman & Co. were parties to the foreclosure decree, and defaulted the same as Sherman. Afterwards, viz., January 27th, 1864, Sherman filed a motion in the District Court, asking that court to redocket the cause of *The County, &c.*, v. *Sypher et al.*, and "to make an order requiring I. W. Griffith, late sheriff, &c., to pay over the surplus proceeds of the sale to the several defendants in the order of their liens." No complaint is made in the motion that the sale was irregular. This motion was not served upon either Tiffin or Cummins, Seaman & Co., nor did they appear. Griffith appeared, however, and resisted it. On the hearing of this motion the above facts were elicited, and on them the District Court ordered the said Griffith to pay over the said surplus of $710 to the said John Sherman in ten days, and in default thereof that execution issue therefor against him. From this order

Griffith appeals, and its correctness is the question to be determined in this court.

*Withrow & Smith* for Griffith, the appellant.

*Casady & Polk* for Sherman, the appellee.

DILLON, J. — There is no objection to the practice of determining contests in relation to the surplus arising from

PRACTICE: motion; surplus. sales on execution *on motion*, instead of by petition in equity or other action, especially where the facts are undisputed, or are susceptible of being clearly and easily ascertained, and no new parties are necessary. This practice is well established. *Williams* v. *Rogers*, 5 Johns., 163; *Ball* v. *Ryers*, 3 Caine's R., 84; *Every* v. *Edgerton*, 7 Wend., 259, 263. See, also, *Ritter* v. *Henshaw*, 7

2. —— New parties. Iowa, 97. But when it appeared in this case that the sheriff had actually paid over the surplusage moneys to the other execution creditors of the common debtor, these should have been before the court. If the sheriff was liable immediately and personally to the appellee, he could then have an order on those to whom he had paid the money to refund it to him, or for other relief, on showing himself thereto entitled. If it should appear that the sheriff was not liable, but that those to whom he had paid the money were liable to the appellee, they could be ordered to refund. But the parties receiving the surplus money in dispute, not being before the court, we proceed to determine the only question before us, viz.: whether the order of the District Court, based on the motion before it, making the sheriff liable personally in respect of the overplus, was correct?

In support of the decision below, the appellee makes this point. The sheriff sold *five* lots (as subdivided), when

3. JUDICIAL SALE: decree and execution. *four* of them produced more than sufficient to pay the debt. Having done so, it is argued that he holds the surplus in trust for the party enti-

tled to the first lien on the land, and that he paid it over at his peril. This is the point in this case that has given us the chief difficulty. The sheriff subdivided the mortgaged estate into five parcels; and four of them sold for enough to pay the decree under which they were sold. A doubt might possibly be suggested whether the sheriff in selling *all* exceeded the command of the writ which is his guide. The writ did not follow the decree, which was to sell the mortgaged estate, or *so much thereof as should be necessary*. In foreclosure proceedings the court, because of the indivisibility of the premises, or because the parties consent, or for other causes, often orders the sale of the whole estate.

The execution, beyond which the sheriff need not go commanded him " to expose to sale the following described property." In selling all, he obeyed the writ literally; although the law and the decree were both violated, so far as the sale of the fifth parcel was concerned. We need express no opinion whether, *under the writ*, the act of the sheriff in making sale of the last parcel was wrongful, because in this case the rights of the parties do not turn upon the decision of this question. See *Trieber* v. *Shafer*, *infra; Waldo* v. *Williams*, 2 Scam., 470. This is not an application to set aside the sale: to disaffirm and repudiate the act of the sheriff in selling too much. There is no evidence that Sypher, whose property was thus sold, makes any objection to the sale. It may admit of serious question, if Sypher ratifies and is satisfied with the sale, because it is an advantageous one or for other reasons, whether it can be impeached and set aside by a judgment creditor. But, waiving this question also, it is clear that when such a creditor comes into court and files a motion, making no complaint about the sale, but simply asking for the surplus, he, by that very proceeding, necessarily affirms and ratifies the act by which, and by which alone, the

surplus was brought into existence. *Bacon* v. *Leonard*, 4 Pick., 277, 280. *On this motion*, which is the only proceeding before us, the question is just the same as if the surplus had arisen under a sale of the most unquestioned regularity. If Sherman wishes to try the question whether the act of the sheriff in selling the fifth parcel was, *as to him*, unauthorized and wrongful, or if he wishes to set aside the sale thereof and to test *his* right to do so, the law affords him appropriate remedies. The present motion was not framed with that view, and claims the money in question on other grounds. It assumes that the money is rightfully in the sheriff's hands, and asks it for the appellee, because he is the next lien-holder in order after the decree.

If the surplus money was still in the hands of the officer, or if it was in court, it would clearly belong to the 4. FORECLO- appellee, who was the *first* lien creditor. By SURE; surplus. the statute, Rev., § 3666, "if there are no other liens upon the property, the overplus shall be paid to the mortgagor."

If there are other liens, "they shall be paid off in their order" (Id., § 3667.) And the doctrine is well established that, when lands are sold on execution, the liens are transferred to, and follow the surplus, at least in equity, and the surplus will be distributed in the order of the liens (whether by judgment or mortgage) on the land out of which it arose. *Averitt* v. *Loucks*, 6 Barb. S. C. R., 470; *Eddy* v. *Smith*, 13 Wend., 488; *Bodine* v. *Moore*, 18 N. Y., 347; *Bartlett* v. *Gale et al.*, 4 Paige, 503; *De La Vergne* v. *Evertson et al.*, 1 Id., 181, 558, 635; *Doniphan* v. *Paxton*, 19 Mo., 288; 23 Id., 429; 16 Id., 341; Am. Law Reg., vol. 2 (N. S.), 733, 734, and authorities cited; *Every* v. *Edgerton*, 7 Wend., 259. This principle is recognized in *Chase* v. *Parker*, 14 Iowa, 207; *Cook & Sargent* v. *Dillon*, 9 Id., 407. It is not in the power of the debtor to assign this surplus so as to defeat liens on the land existing at the time of the

assignment. *Doniphan* v. *Paxton*, 19 Mo., 288 ; *Van Nest* v. *Yeomans*, 1 Wend., 87 ; *Palmer* v. *Yarborough*, 1 Ired. (Eq.), 310.

If the surplus is levied upon and appropriated by a *junior* lien-holder, this is an assignment from the debtor by *operation of law ;* and this cannot be done to the destruction or prejudice of prior liens, any more than if the assignment had been direct from the debtor by contract or deed. *Eddy* v. *Smith*, 13 Wend., 488, 490, and cases *supra*. While the court would, as above observed, have awarded the surplus to the appellee, if the sheriff had returned the money into court, or if it were still in his hands, it does not follow that the sheriff is liable, under the circumstances, for having applied it on the other writs. The execution under which he acted, did not require him to bring the surplus into court. It did not advise or notify him that the appellee or that any other person had liens upon the property or was interested in the surplus. Nor had he actual knowledge of such liens. He was therefore justified in presuming that the surplus was the property of Sypher. (Rev., § 3315.) Under these circumstances he might have paid this surplus to Sypher without incurring liability, had no other executions been placed in his hand. When these came into his hands, it was his duty (having no notice of other liens) to levy them upon the overplus as Sypher's property, and having done so in good faith, and actually paid over the money, it seems to us manifestly unjust to subject him to liability to a party who had failed in the foreclosure proceeding to set up his rights, and respecting which the sheriff was faultlessly ignorant. It was stated, *arguendo*, in *Cook* v. *Dillon*, 9 Iowa, 407, that a trustee making sale of land under a deed of trust, is not bound to take notice of or search for subsequent judgments or liens, and that if such lien-holders do not notify him of their rights, he will be without fault and without liability

if he pays the surplus over to the party whose land was sold. This is reasonable, and the principle is equally applicable to sales by a sheriff. His writ is his charter and his guide. He is not bound to examine the records of the county or those of the court to ascertain the rights of subsequent grantees or incumbrancers. *Bacon* v. *Leonard,* 4 Pick., 281. " Whilst the avails of a sale *remain in the hands of a sheriff,* they are subject to the control of the court" (per WOODWORTH, J., in *Van Nest* v. *Yeomans,* 1 Wend., 87 ; and see also *The People ex rel.* v. *Ulster Common Pleas,* 18 Wend., 628, 630 ; *Bartlett* v. *Gage,* 4 Paige, 503); but the sheriff will be protected where he acts in good faith, and without actual knowledge of the rights of others, when he is under no obligation to ascertain those rights. *Bacon* v. *Leonard,* 4 Pick., 277, 281, which fully supports the views above expressed ; and see also *Williams* v. *Rogers,* 5 Johns., 163, 167 ; *Turner* v. *Fendall,* 1 Cranch, 117. As to the right of the appellee to have the sale of the fifth parcel set aside, or to hold the sheriff in damages, we give no opinion. Whatever rights the appellee has as respects the surplus, he must assert against those who received the money. The order appealed from is therefore

Reversed.