FIRST FEDERAL SAVINGS AND LOAN
ASSOCIATION OF STORM LAKE,
Iowa, Plaintiff,

v.

Joseph F. BLASS, Marlene M. Blass, Lor-
ing Hospital, Sherman J. Higgins, Sac
County Implement, Inc., Simplot Soil-
builders, Reiter Feed Company, Inc.,
Wilmer Koessel, Citizens Savings Bank,
and Sac County, Iowa, Defendants.

SIMPLOT SOILBUILDERS, Appellant,

v.

SAC COUNTY IMPLEMENT, INC., Reiter
Feed Company, Inc., Wilmer Koessel,
Citizens Savings Bank, Loring Hospital,
Appellees.

No. 65473.

Supreme Court of Iowa.

Feb. 17, 1982.

Lon R. Tullar, Sac City, for appellant.

Colin J. McCullough of McCullough Law Firm, P. C., Sac City, for appellees.

Considered by REYNOLDSON, C.J., and UHLENHOPP, HARRIS, McGIVERIN, and SCHULTZ, JJ.

SCHULTZ, Justice.

Appellant, Simplot Soilbuilders, appeals from an adverse ruling in a mortgage foreclosure action, distributing an overplus from a sale of real property in accordance with the provisions of section 654.9, The Code. Simplot contends that the trial court erred in determining that its garnishment of the overplus pursuant to a general execution under section 626.82, The Code, to the detriment of senior lienholders, was improper, and in determining that the senior lienholders were not precluded from asserting their superior rights by the doctrine of laches. Simplot also contends the trial court erroneously charged it interest for its allegedly wrongful use of the overplus. We affirm.

On November 9, 1977, First Federal Savings and Loan Association of Storm Lake, Iowa, filed a petition for mortgage foreclosure against Joseph F. and Marlene M. Blass. Several persons who held judgment liens against the property, including Simplot and the appellees, Sac County Implement, Inc., Reiter Feed Company, Inc., Wilmer Koessel, Citizens Savings Bank, and Loring Hospital, were also made parties defendant. A decree, which was entered on May 23, 1978, declared the mortgage foreclosed and provided for special execution and sale of the mortgaged real estate. The property was sold on June 23, 1978. The sale resulted in proceeds of $12,126.70 in excess of First Federal's judgment and the fees and taxable costs of the foreclosure action and sale. The foreclosure decree did not provide the manner in which this overplus was to be distributed, however.

When the foreclosure action was commenced, the parties who claim rights to the overplus in this appeal held unsatisfied judgment liens, listed by the date on which they were entered, as follows:

(1) November 10, 1976, Loring Hospital: $513;

(2) February 10, 1977, Sac County Implement, Inc.: $999.99;

(3) February 14, 1977, Simplot Soilbuilders: $6,321.64;

(4) April 11, 1977, Reiter Feed Company, Inc.: $26,699.10;

(5) April 11, 1977, William Koessel: $23,238.33;

(6) April 11, 1977, Citizens Savings Bank: $36,548.21.

The April 11 lienholders later stipulated that their judgments were entered simultaneously and agreed to share, on a pro rata basis, any monies available for partial satisfaction of their respective judgment liens.

On December 5, 1977, after the commencement of the foreclosure action but prior to the date the decree was entered, Simplot obtained another judgment against the Blasses, for $5,653.52. Thereafter, Simplot initiated a collateral proceeding to satisfy its two judgments. On June 22, 1978, pursuant to Simplot's request, the Sac District Clerk of Court issued a general execution to the Sac County Sheriff. On June 23, 1978, the date of the foreclosure sale, Simplot garnished the overplus from the sale, which was in the sheriff's possession pursuant to the general execution. Simplot then obtained a judgment on June 26, 1978, condemning the overplus and applying it to the satisfaction of its judgment liens. The other judgment lienholders were not given notice of this collateral proceeding.

On October 31, 1979, more than sixteen months after the foreclosure sale, Citizens Savings Bank, Wilmer Koessel, and Reiter Feed Company filed a motion in the foreclosure action to determine priorities in the overplus among all parties. Loring Hospital joined in the motion on November 6, 1979. The motion was resisted by Simplot, and a hearing was held on January 11, 1980. On February 5, 1980, the trial court entered an order determining that under sections 654.7 and 654.9, The Code, Simplot did not have a judgment lien superior to the liens of all other lienholders, and that the doctrine of laches did not bar such lienholders from asserting their rights to the overplus. The order vacated the judgment condemning the overplus and applying it in satisfaction of Simplot's judgment liens, required Simplot to repay the money it received from the overplus to the clerk of court, and provided that any party could apply for a hearing to determine lien priorities.

All of the parties to this appeal, including Simplot, applied for a determination of lien priorities. On June 11, 1980, the trial court entered an order that established lien priority chronologically, by the date that the respective judgments were entered. The court also ordered Simplot to pay interest at seven percent per annum from the time the overplus was garnished until it was paid to the clerk of court. The trial court's determination of priorities resulted in Simplot's February 14, 1977, lien being fully satisfied; its December 5, 1977, lien was left completely unsatisfied, however.

On appeal Simplot contends: (1) section 626.82, The Code, rather than sections 654.7 and 654.9, The Code, should govern the disposition of the overplus; (2) the equitable doctrine of laches should prohibit the other judgment lienholders from asserting their rights to the overplus; and (3) it should not be required to pay interest to the other judgment lienholders.

■ I. *Applicability of section 626.82.* Simplot maintains that the trial court erred in determining that sections 654.7 and 654.9 controlled distribution of the overplus. Section 654.7 provides: "If there is an over-

plus remaining after satisfying the mortgage and costs, and if there is no other lien upon the property, such overplus shall be paid to the mortgagor." Section 654.9 provides in pertinent part: "If there are any other liens on the property sold, ... *they shall be paid off in their order.*" (Emphasis added).

Section 626.82, The Code, which appears in the general execution chapter of the Code, provides:

When the property sells for more than the amount required to be collected, the overplus must be paid to the debtor, unless the officer has another execution in his hands on which said overplus may be rightfully applied, or unless there are liens upon the property which ought to be paid therefrom, and the holders thereof make claim to such surplus and demand application thereon, in which case the officer shall pay the same into the hands of the clerk of the district court, and it shall be applied as ordered by the court.

Simplot argues that the overplus provisions of chapter 654 apply only to overplus in the possession of the mortgagee, and that garnishment of overplus in the possession of the sheriff after a mortgage foreclosure sale is proper under section 626.82.

We find no authority to support Simplot's contention that the overplus provisions of chapter 654 apply only when the overplus is in the possession of the mortgagee. Section 654.5, The Code, provides that when a mortgage is foreclosed the court shall direct the mortgaged property to be sold pursuant to special execution. The sheriff then levies on the property and conducts the sale, acting for the legal authority of the court. *See* § 337.3, The Code. The mortgagee is entitled to receive only proceeds sufficient to satisfy the mortgage. Any overplus is applied to other liens on the property or, if none, paid to the mortgagor. §§ 654.7, .9, The Code. The mortgagee should therefore never have possession of the overplus. Accordingly, it would be anomalous to limit the application of chapter 654 in the manner advocated by Simplot.

Mortgage foreclosures are specifically governed by chapter 654, The Code. Section 654.9 expressly provides the procedure for distributing any overplus that exists after the mortgage and costs of foreclosure have been satisfied: "any other liens on the property sold . . . shall be paid off in their order." The case before us is a mortgage foreclosure action, and it is undisputed that Simplot's second judgment lien is junior to the liens of the other lienholders.

In *The County of Polk ex rel. the School Fund v. Sypher*, 17 Iowa 358 (1864), a sheriff paid an overplus from a mortgage foreclosure sale to junior lienholders pursuant to execution. After quoting the predecessor of section 654.9, this court stated: "And the doctrine is well established that, when lands are sold on execution, the liens are transferred to, and follow the surplus, at least in equity, and the surplus will be distributed in the order of the liens (whether by judgment or mortgage) on the land out of which it arose." *Id.* at 363. Since the liens followed the overplus, Simplot could not defeat the rights of senior lienholders by levying on the overplus. Simplot took those proceeds subject to their superior rights. Accordingly, the trial court correctly concluded that section 654.9 governed distribution of the overplus.

*Hoyer v. Graham & Schenck*, 150 Iowa 63, 129 N.W. 317 (1911), another early mortgage foreclosure action, is similar to the present case but distinguishable due to the nature of the action. In *Hoyer* real property subject to a mortgage and two judgment liens was sold pursuant to a mortgage foreclosure decree that did not establish priority between the judgment lienholders. The junior lienholder caused a general execution to be issued, and the sheriff levied on the overplus resulting from the foreclosure sale, which was used to satisfy the junior lien. The senior lienholder then brought an action for damages against the junior lienholder. This court determined that under the provisions of what is now section 654.9, the senior lienholder had a superior right to the overplus. *Id.* at 64–65, 129 N.W. at 317–18. However, the court concluded that the senior lienholder was not entitled to

damages in an action at law since he was required to "plead and prove that he was in fact damaged by the action complained of." *Id.* at 66, 129 N.W. at 318. The court found that the required showing had not been made since the record did not reveal that the judgment debtor was insolvent or that the judgment could not be satisfied from other property or by redemption. The court noted that an appropriate remedy would have been to file a motion in the foreclosure action, which would have availed the senior lienholder of the provisions of the Code relating to overplus on a mortgage foreclosure. *Id.* at 65–66, 129 N.W. at 318.

In the present case this recommended course of action was taken. We must determine whether, as Simplot contends, the action came too late.

II. *Laches.* Simplot maintains that the doctrine of laches precludes the other lienholders from satisfying their liens from the overplus. The trial court noted that the other lienholders were dilatory in failing to assert their rights in the overplus until sixteen months after the foreclosure sale. The court, however, found the doctrine of laches was not applicable under the facts of the case and that, in any event, laches was not available because it had not been pled.

Simplot contends that it did not have to plead laches because the hearing during which the defense was raised was held pursuant to a motion, not on the pleadings. Since we agree with the trial court that laches is inapplicable on the facts of the case, we need not determine whether the defense had to be pled.

■■■ Laches is an equitable doctrine premised on unreasonable delay in asserting a right, which causes disadvantage or prejudice to another. *Davenport Osteopathic Hospital Association v. Hospital Service, Inc.*, 261 Iowa 247, 261, 154 N.W.2d 153, 162 (1967). The party asserting the defense has the burden to establish all of the essential elements thereof by clear, convincing, and satisfactory evidence. *Moser v. Thorp Sales Corp.*, 256 N.W.2d 900, 908 (Iowa 1977).

Prejudice is an essential element of laches. *See Davidson v. Van Lengen*, 266 N.W.2d 436, 439 (Iowa 1978).

 Simplot claims that it was prejudiced because had it known the other judgment lienors would later claim the overplus, it could have adapted to such claims and protected itself against the resultant loss. Simplot does not specify the manner in which it would have protected itself, however.

Simplot's February 14, 1977, judgment lien has been fully satisfied by the trial court's determination of lien priorities. Its December 5, 1977, judgment lien is junior to other judgment liens totaling approximately $88,000. The purchase price of the real property at the foreclosure sale was $36,500. There is no evidence in the record the property had sufficient value to make redemption under chapter 628, The Code, feasible, or that Simplot would have redeemed even if it were feasible. Furthermore, there is no evidence that Simplot could have satisfied its judgment from other property of the judgment debtor if the other lienholders had asserted their rights earlier.

Having failed to establish prejudice, Simplot's allegation that the trial court erred in finding the doctrine of laches inapplicable is without merit.

III. *Interest.* The trial court ordered Simplot to pay interest on the overplus at the rate of seven percent per annum. The court determined that if Simplot were not charged interest for its use of the funds, it would have received a windfall. Simplot maintains the trial court erred in so ruling.

 A mortgage foreclosure is an action in equity. § 654.1, The Code. In equity a court has considerable flexibility in framing an appropriate remedy. *Iowa Department of Social Services v. Blair*, 294 N.W.2d 567, 570 (Iowa 1980).

 In this case Simplot apparently attempted to defeat the rights of the senior lienholders by garnishing the overplus. In division I we held that the distribution of an overplus from a mortgage foreclosure is governed by section 654.9, The Code, when there are other liens on the property sold. Simplot's procurement and use of the portion of the overplus to which it was not entitled was therefore wrongful. As the trial court determined, if Simplot were not charged interest for its use of these funds, it would receive a windfall. Accordingly, we hold that the trial court did not abuse its discretion in fashioning the equitable remedy.

AFFIRMED.