BARBER vs. CARY.

On the 4th December, 1846, the plaintiff executed two mortgages on the same
premises, for the purchase money; one to S. for $221,56, payable in
nine equal annual installments; and the other, for $86,23, payable to the
defendant in three equal annual installments, the first to become due De-
cember 4, 1856. It was agreed the mortgage to S. should be the first
lien on the premises. This mortgage was subsequently assigned by S. to
the defendant, and was foreclosed under the statute. Upon the sale of the
premises, on the 5th of January, 1850, the same were struck off to M. for
$431,50, a sum larger than the amount due upon the mortgage, with the
costs of foreclosure. *Held* that the defendant was entitled to have the
mortgage for $86,23, first satisfied out of the surplus moneys; and that
the plaintiff was entitled only to the balance remaining, after paying that
mortgage, with interest.

THIS was an action brought by the plaintiff to recover of the
defendant the sum of $136,40, being the surplus moneys upon
a mortgage sale, received by the defendant's attorney, and which
the plaintiff claimed as belonging to him. The defendant, by
his answer, claimed a right to retain the surplus moneys by vir-
tue of another mortgage for $86,23, upon the same premises,
executed by the plaintiff, and which was due and unpaid. The
cause was tried before Mr. Justice Mason at the Chenango cir-
cuit on the 8th April, 1851. On the 4th December, 1846,
the plaintiff executed two mortgages on the same premises,
one to William G. Sands for $221,56, which was assigned to the
defendant on the 25th June, 1849, payable in nine equal annual
installments, with interest annually on all sums unpaid, first in-
stallment to become due 4th December, 1847. The other mort-
gage was payable to the defendant for $86,23, with interest annu-
ally from date, to be paid in three equal annual installments, the
first installment to become due 4th December, 1856. The mort-
gage given to Sands was foreclosed by statute foreclosure, and
the premises were struck off to Ira E. Merrill by the auctioneer,
on Saturday the 5th January, 1850, at three or four o'clock P.
M., for $431,50.

The plaintiff claimed the surplus moneys after paying the
Sands mortgage and the costs of foreclosure, while the defend-

ant claimed that they should be applied on the mortgage for $86,23, payable to himself, which he presented to the auctioneer for the purpose. On the trial the defendant asked the judge to charge the jury that he was entitled to have the surplus moneys applied upon his mortgage, but the judge charged that the defendant was not entitled to have the surplus so applied; to which charge the defendant excepted.

The two mortgages were not only given at the same time but were both given for the purchase money. The mortgage of smaller amount given to the defendant, contained a clause giving a prior lien to the Sands mortgage, in consideration that Sands had held a judgment which was a lien on the land before the mortgages were given and which judgment was cancelled upon the giving of said mortgages. The jury found a verdict for the plaintiff for $137,21, and judgment was entered for that sum.

*R. J. Baldwin,* for the plaintiff.

*John Wait,* for the defendant.

*By the Court,* MONSON, J. It seems to be a principle well settled, and indeed is not denied by the counsel for the plaintiff, that the defendant was entitled to retain out of the moneys arising on the sale, not only sufficient to satisfy the amount of the installments then due, but also sufficient to satisfy those to become due thereafter on the mortgage foreclosed. (*Cox* v. *Wheeler,* 7 *Paige,* 248.) But why does not that go the length of deciding this claim in favor of the defendant? What reason can there be for distinguishing between these mortgages, under the circumstances of this case. The objection that the installments of the smaller mortgage are not yet due, applies, as it seems to me, with as much force against the installments not due on the one foreclosed.

But these two mortgages are in fact to be regarded as only one instrument, since they were given at the same time and relate to the same subject matter. (3 *Wend.* 234. 1 *Hill,* 601. 3 *Barb. Sup. Court Rep.* 141. *Id.* 399.) Authorities

Barber *v.* Cary.

seem to concur with the reason and justice of the case. In *Eddy* v. *Smith*, (18 *Wend.* 488,) Smith held a mortgage and judgment upon the same premises. He foreclosed the mortgage by statute, and claimed to apply the surplus moneys to satisfy his subsequent judgment against the claim of the plaintiff, who was a bona fide purchaser of the rights of the mortgagor, and his, the defendant's, claim was sustained. It seems to me that the case before us is a stronger one in favor of Cary the defendant's claim, than the case cited was in favor of Smith's claim, because in that case a judgment was allowed to be satisfied which was a general lien, and which was given more than a year afterwards for a different consideration, and that too against a bona fide purchaser of the mortgagor; while in the case before us it is a mortgage, a specific lien, given at the same time with the one foreclosed and for the same subject matter, which is asked to be satisfied as against the mortgagor himself. In *Bartlett* v. *Gale* (4 *Paige*, 504,) where land was sold on a judgment, it was held that a subsequent mortgagee had a lien on the surplus moneys, to the amount of his mortgage; that the sheriff had no right to pay the surplus moneys to the mortgagor, nor could the mortgagor discharge them; that the purchaser was chargeable with the amount of his bid to the extent of the subsequent mortgage, after paying off the judgment on which the premises were sold; that he bought only the right and title of the mortgagor subject to the prior incumbrances, although the purchaser claimed that those should be deducted from his bid, or else he would suffer a loss, as the land was not worth enough to pay the subsequent mortgage including the prior incumbrances. In *Astor* v. *Miller*, (2 *Paige*, 68,) it was held that where real or personal estate upon which there is an outstanding mortgage is turned into money, the rights of the mortgagee continue unaltered, and the court will direct the application of the money according to the rights of the parties as they existed previous to the alteration of the estate.

The action in this case is for money had and received, which is an equitable action and will lie whenever the defendant has received money belonging to the plaintiff, which, according to

natural equity and justice, he ought to refund or pay over. It takes the place of a bill in equity, and should not be extended to cases where the defendant may be deprived of any right, or subjected to any inconvenience. The plaintiff can only recover what remains after deducting all just allowances. The charge and defense are both governed by the true equity and conscience of the case. The defendant may defend himself by showing that the plaintiff *ex aequo et bono* is not entitled to the whole of his demand, or any part of it. The plaintiff must show that he could recover in a court of equity. (13 *Wend.* 490. 2 *Barb. S. C. R.* 145 *to* 147. 2 *Denio*, 93. 1 *Doug.* 138. 2 *Burr.* 1010. 4 *Id.* 2133, 2134. 2 *T. R.* 370. *Cowp.* 793.)

I see no reason for saying that the defendant has waived the lien of the smaller mortgage by purchasing the other, or the one having a preference. Neither is there force in the objection that by allowing the defendant to retain the amount of the smaller mortgage, there would be left in his hands a bond to be enforced as it fell due, without remedy to the plaintiff. For what would be the remedy of the plaintiff when the mortgaged premises are sold on foreclosure upon default in the payment of certain installments, where the mortgagee is allowed to retain of the surplus moneys enough to satisfy future installments as they become due, or where the mortgaged premises are sold subject to future installments, and purchased in by a stranger or by the mortgagee. In any case where the debt is paid, the mortgagor who gave the bond would have a right in equity to restrain the holder of the bond from prosecuting the same at law. (7 *Paige*, 257.)

But it is said by the plaintiff's counsel, that by allowing the defendant to retain the amount of his smaller mortgage, he would obtain payment before it became due. If the debt is on interest, that of course is saved, and if the debt is not on interest, a deduction may be made by way of rebate of interest; while on the other hand, if the defendant is not allowed to retain the amount of this mortgage, the lien is entirely lost, and the value of the bond would depend upon the solvency of the grantor. Which, therefore, is the greater evil, to have the debt paid be-

fore due, or to have the debt lost? Besides; this objection, that the debt would be collected before due, applies with equal force, in my judgment, to the installments not due on the mortgage foreclosed, where it is allowed to have no weight at all.

I am, therefore, clearly and decidedly of the opinion which I entertained and expressed when this case was before us on a former occasion, that the defendant was entitled to have the mortgage in question satisfied out of the surplus moneys arising from the sale of the Sands mortgage, after satisfying the same with costs of foreclosure.

After expressing this opinion upon the principal question in this cause, perhaps it is unnecessary to discuss a minor point, which, if found to be adverse to the plaintiff, the only effect would be to turn him round to another action and postpone the decision of this cause upon its merits; but I am also of the opinion now, as on the former occasion, that the defendant should have had a reasonable time after the sale to make out the necessary papers, and to pay over the surplus moneys, if any were due, and that such time was not allowed before this suit was commenced. (6 *Cowen*, 13. 7 *Id.* 53. 10 *Verm. Rep.* 474.)

The auctioneer was delayed by the non-payment of the money by the purchaser for several hours. It had got to be evening. His family were sick and required his attention. He had to adjust the costs and make out the affidavits and other papers. The foreclosure was not complete, the title did not pass to the purchaser until a conveyance was executed. (4 *Denio*, 45, 46.) That was the first in order to be done. Mason said he had rather make out the papers and carry them to Oxford, the distance of 8 miles, and pay over the surplus money, the next morning, or which is the same thing, on Monday morning, as the next day was *dies non juridicus.* But this offer was not accepted. The demand was made of the defendant at his house in Oxford, between 10 and 11 o'clock at night. The money was then in the hands of Mason, the defendant's attorney, at Norwich, to whom it had been paid, and where it had remained since it was paid, whose business it was to dispose of it and make out the papers, and so the defendant stated to the plain-

---

tiff's attorney. The summons and complaint were then served immediately. No reason is assigned by the learned counsel for the plaintiff for this untimely haste. It is not pretended that the plaintiff's right would have suffered had the suit not been commenced till Monday. A man should exercise his rights in a reasonable manner, and pay a cautious regard to the rights of others. (17 *John.* 99, 306. 16 *Pick.* 227.) I think the verdict of the jury was against evidence.

Upon the whole I am of opinion that the judgment should be reversed, with costs to abide the event.

Judgment reversed.(*a*)

[TOMPKINS GENERAL TERM, September 2, 1851. *Mason*, *Shankland* and *Monson*, Justices.]

(*a*) Justices Mason and Shankland did not concur in the above opinion, upon the last point—as to time.