# THIRD DEPARTMENT,

AT

# GENERAL TERM,

November, 1879.

19  137
22ap281

## THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT, *v.* HENRY D. DENISON, JAMES J. BELDEN, A. CADWELL BELDEN AND THOMAS GALE, APPELLANTS.

*Action in tort — recovery not allowed on contract — action of an equitable nature to recover back money paid — when State not allowed to recover money paid for unauthorized work accepted by it.*

The complaint in this action alleged that the defendants entered into a contract with the plaintiff to perform certain work upon the canal and furnish material therefor ; that the amount to be received by them thereunder was $74,183.40 ; that no change or alteration in the plan, or the work to be done, had been lawfully made.  It then alleged that the defendants " under color of said contract, without right, obtained and received moneys owned and belonging, and which now belong, to this State, amounting in the aggregate to the sum of $417,571. That the said moneys were so obtained and received by the defendants by means of frauds, devices, false pretences and vouchers, and corrupt combinations and collusions with State officers," and then set forth certain alleged frauds.  The referees, before whom the action was tried, found that the contract was let as alleged in the complaint ; that the same was unlawfully, and without authority, thereafter changed, and the cost of the work largely increased by the removal of a quantity of the slope wall of the canal and the substitution therefor of vertical wall, and that the money paid for such unauthorized work so performed, and the materials furnished therefor, could be recovered back. The report contained no finding, nor was any evidence given, showing fraud on the part of any person, or any imperfection in the work done, or that the work

and materials were not worth the amounts paid therefor. The payments had been made as the work progressed upon certificates and estimates of officers of the State.

*Held,* that the action was in tort, and that as no fraud had been proved, a recovery could not be had on contract.

That as the work was done on the property of the State, and as it had received and still retained the benefits thereof, an action would not lie to recover the money paid therefor by officers to whom it had entrusted the supervision and management of the work.

APPEAL from a judgment in favor of the plaintiff, entered upon the report of three referees.

The complaint alleged that the defendant Henry D. Denison entered into a contract with the plaintiff to do certain work on the canal; that though the contract was made in the name of said Denison, yet that said Denison was, in fact, in the making thereof and the subsequent doing of the work, acting as a partner with the other defendants, who were jointly interested with him therein; that before the signing of the contract an estimate of the expense of doing the work mentioned therein had been made by the division engineer, who had estimated the same at the sum of $86,645; "that by the terms of said contract it was agreed that the said Denison should perform the work embraced therein, and that the canal commissioners in charge should pay out of the moneys appropriated therefor in full compensation for the same, at the rates specified in said contract, provided always that the total amount paid by said commissioner to said Denison should not exceed, in the aggregate, the estimated amount of the said work, including the expenses of engineering; that the amount which, under said contract, said Denison was to receive from the canal commissioner in charge, at the rates and for the quantities stated in said contract — said quantities being the same as estimated by the division engineer as aforesaid — was the sum of $74,183.40; that under the law of the State no alteration could be made in the plan of the work mentioned in said contract, except by the consent and approval of the commissioner and the division engineer, nor unless the description of such alteration and the approval thereof was reduced to writing and signed by the parties making the same, and a copy thereof filed in the office of the State engineer and surveyor, nor could any change of plan that should increase the

expense of the work be made, unless a written statement, setting forth the objects to be attained by such change, and the expense thereof, was submitted to the canal board, and their ascent, at a meeting in which the State engineer and surveyor was present, be obtained, nor could any moneys be expended or paid for new work or work on change of plan, nor any contract involving such expenditure and payment be made on behalf of the State, until the maps, plans and estimates for such work should have been submitted to and approved by the canal board, and the work advertised and let to the lowest bidder; that no consent and approval of any alteration in the plan of this work was, in fact, made by the commissioner and division engineer, nor was any description of any alteration and the approval thereof reduced to writing and signed by the parties making the same, and a copy thereof filed in the office of the State engineer and surveyor, nor was any written statement, setting forth the objects to be attained by any change of plan of this work, and the expense thereof, submitted to the canal board, and their assent thereto obtained at any meeting thereof, nor was any new work or work on change of plan, nor maps, plans or estimates thereof submitted to or approved by the canal board; that the defendants have, through the defendant Denison, under color of the said contract, without right, obtained and received moneys owned and belonging, and which now belong, to this State, amounting, in the aggregate, to the sum of $417,571; that the said moneys were so obtained and received by the defendants by means of frauds, devices, false pretences and vouchers, and corrupt combinations and collusions with State officers, among which are the following." The complaint then set out in detail certain changes and alterations alleged to have been made in the contract, and then alleged "that the moneys received and obtained by defendants from the treasury of the State, as hereinbefore alleged and set forth, were paid out by the State treasurer, on drafts drawn therefor by the canal commissioners upon the auditor of the canal department, and warrants by the auditor of the canal department on the State treasurer, in ignorance of the fact, and under the belief and mistake on his part that the defendants were entitled thereto, and that they were for work and materials performed and furnished, legally, under a

contract with the State; that the false certificates and vouchers presented by the defendants, which were procured by them from the assistant engineers and resident engineers, officers of the State, plaintiffs say, upon information and belief, were procured and obtained by the exercise of corrupt influences upon the said officers, and, among other influences, by inducing the said officers to believe that, through the great political power and influence of the defendants and their friends, the said engineers would be dismissed if they refused to sign such certificates and vouchers, and would be rewarded if they assented so to do."

*Wm. C. Ruger*, for the appellants, Denison and A. C. Belden. No recovery can be had under the pleadings in this action, except upon proof of fraud on the part of the defendants. (*Ross* v. *Mathers*, 51 N. Y., 108; *Dudley* v. *Farnham*, 57 id., 424; *Barnes* v. *Quigley*, 59 id., 268; *De Graw* v. *Elmore*, 50 id., 1; *Mathews* v. *Cady*, 61 id., 651; *Walter* v. *Bennett*, 16 id., 250; *Belknap* v. *Sealey*, 14 id., 147.) Its character is determined by the form of the summons, which demands a judgment for relief alone. (*Miller* v. *Barber*, 66 N. Y., 564.) Moneys voluntarily paid by a party can be recovered back by him only when the payment has been induced by fraud or mistake of fact. (*Mowatt* v. *Wright*, 1 Wend., 355; *Wyman* v. *Farnsworth*, 3 Barb., 370; *Clock* v. *Dutcher*, 9 Cow., 574; *Briggs* v. *Supervisors*, 2 Denio, 26; *Flower* v. *Lance*, 59 N. Y., 603; *Reed* v. *Hicks*, 25 id., 389.) When the party paying has the means of knowledge he cannot allege a mistake. (*Clock* v. *Dutcher*, 9 Cow., 674; *Reed* v. *Hicks*, 25 N. Y., 389; *Wyman* v. *Farnsworth*, 3 Barb., 370.) The Canal Commissioners, State Engineer, and Canal Board, are within the sphere of their official duties the lawfully constituted agents of the State. (*People* v. *Stephens*, 71 N. Y., 550; §§ 3, 4 and 5, chap. 877, Laws of 1869; Chapman's Manual, §§ 178, 277, 308, 309, 310, 311, 312, 313, 323, 850, 852, 865; 13 Barb., 86.) The knowledge of the agent is the knowledge of the principal, especially so when acquired in the transaction of the business of the principal. (*Bk. of U. S.* v. *Davis*, 2 Hill, 451; *Hawley* v. *Keeler*, 53 N. Y., 114; *Ingalls* v. *Morgan*, 10 id., 184; *Distilled Spirits*, 11 Wal., 356; *Bennett* v. *Buchan*, Ct. of App., Mch., 1879.) Notice to

one of a number of joint agents is notice to all other agents as well as to the principal.) *Bk. of U. S.* v. *Davis*, 2 Hill, 451.) The Legislature is presumed to have knowledge of facts upon which its official action proceeds. (*De Camp* v. *Eveland*, 19 Barb., 81; *Brown* v. *Mayor*, 63 N. Y., 242.) The State is a corporation and of necessity continues the same being, although its officers, trustees and agents may be frequently or even annually changed, and knowledge once legally imputable to it, always continues, in contemplation of law. (*Commissioners of Chenango* v. *Birdsall*, 4 Wend., 460; Dillon on Corporation, §§ 9, 14; *Bank* v. *Seton*, 1 Peters, 299; *Scadding* v. *Lovant*, 5 Eng. Law & Eq., 16.) Official duties enjoined upon public officers will be presumed to have been performed. (*Hartwell* v. *Root*, 19 Johns., 345; *Leland* v. *Cameron*, 31 N. Y., 115.) An act of the Legislature cannot be subverted upon the ground that it is hostile to public policy, or that its passage was secured by fraud, misrepresentations or suppression of facts. (*People* v. *Draper*, 15 N. Y., 545; *People* v. *Shepard*, 36 id., 289; 7 New York Legal Obs., 186.)

*Frank Hiscock*, for the appellants, James J. Belden and Thomas Gale. It is submitted that the acts of the Legislature, the information, knowledge and acts of the officers of the State, and its appropriation of appellants' material, etc., conclusively show a ratification of all appellants' work, etc. ; especially in the absence of any proof of subsequent disapproval, because where a principal is informed by his agent, or has knowledge of what he has done outside of his authority, he must dissent and give notice thereof in a reasonable time, otherwise his assent to what has been done shall be presumed, especially where he has received the fruits of the agency. (*Cairns* v. *Bleecker*, 12 Johns., 300, 305; *Sage* v. *Sherman*, 2 N. Y., 417, 435; *Birdenbecker* v. *Lowell*, 32 Barb., 9, 19; *Delafield* v. *Illinois*, 26 Wend., 192, 228; *Bank of U. S.* v. *Davis*, 2 Hill, 451, 461; *Dresser* v. *Norwood*, 17 C. B. [N. S.], 466, and note 482; *The Distilled Spirits*, 11 Wal., 356, 367, 368; *Adams* v. *Mills*, 60 N. Y., 533, 539; *Hart* v. *Farmers and Mechanics' Bank*, 33 Vt., 253; *Bennett* v. *Buchan*, decided in Ct. of App., Mch. 18, 1879; A. L. J., No. 13, vol. 19, page 260;

Angel & Ames on Corporations, § 305, and cases cited; *Hoyt* v. *Thompson's Exr.*, 19 N. Y., 208, 218; *Olcott* v. *Tioga R. R. Co.*, 27 id., 546, 560; *Walworth Company Bank* v. *Farmers' Loan and Trust Company*, 16 Wis., 629; *Murray* v. *Binninger*, 3 Keyes, 107, and *Lester* v. *Vieley*, 47 N. Y., 648; see, also, *Smith* v. *Tracy, Exr.*, 36 N. Y., 79, 83; *Bramen* v. *Mayor*, 63 id., 239, 244; *People* v. *Stevens*, 71 id., 527, 550; *Lewis* v. *Trickey*, 20 Barb., 390; *Nelson* v. *Mayor*, 63 N. Y., 535, 544; *Turnow* v. *Hockstadter*, 14 N. Y., *S. C.*, Reports 80.) The contractor had a right to presume that the State officers had complied with all requirements before purchasing materials and labor or paying, and if the officers did their duty carelessly the remedy is not by depriving the contractors of the value of their labor and materials, long after they have been paid for, so far as they are of value to and are enjoyed by the State. (*People* v. *Stephens*, 71 N. Y., 560; *County of Daviess* v. *Hindekoper*, Alb. L. J., March 8, 1879, p. 201; see 1 Bissell Cir. Ct. Rep., 299, and note thereunder; see *Munson* v. *Town of Lyons*, not reported; *Town of Venice* v. *Murdock*, 92 U. S. Sup. Ct., 497; *Smith* v. *Town of Yates*, MSS. opinion of Judge WALLACE; *Miller* v. *Town of Berliro*, 13 Blatchford, 245; *Moore* v. *Mayor, etc.*, 73 N. Y., 238.)

*E. W. Paige*, for the respondent. The money transmitted to the defendants for all work, except of the quantities and kinds shown in the preliminary estimate, and which, at the defendants' bids, amounted to $74,183.40, and to which the contract was expressly limited, were illegally paid and without right. This being so, it is now settled that, although paid without fraud or mistake, it can be recovered back. (*Donahue* v. *The Mayor*, 10 Hun, 37; Laws 1875, chap. 49; *Supervisors of Richmond Co.* v. *Ellis*, 59 N. Y., 620.) The contract expressly "provides always that the total amount paid by the canal commissioner to the said party of the first part (the defendants) *shall not exceed, in the aggregate,* the estimated amount of the aforesaid work, including the expense of engineering." Although, therefore, the contractor should do more work and furnish more materials than this estimate and this contract, it would be wholly voluntary and

unauthorized, and compensation therefor irrecoverable, and consequently, under the *Richmond County Case*, cited above, money of the plaintiff obtained by the defendants under pretence thereof can be recovered back. (*Dickinson* v. *Poughkeepsie; McDonald* v. *City of N. Y.*, 68 N. Y., 23; *Brady* v. *Mayor of N. Y.*, 2 Bosw., 173; *S. C.*, affirmed, 20 N. Y., 312; *Halsted* v. *Mayor, etc.*, 3 Comst., 430; *Hogan* v. *City of Brooklyn*, 52 N. Y., 282; *Fox* v. *City of New Orleans*, 12 La. Ann., 154; *Johnson* v. *Com. Council*, 16 Ind., 227; *Butler* v. *Charleston*, 7 Gray, 12; *Swift* v. *Williamsburgh*, 24 Barb., 427.) It is now settled that the mere making of an appropriation by the Legislature applicable to a particular work, over and above the amount contracted for, does not enlarge that contract or the powers of officers with regard to it. (*People ex rel. Sage* v. *Schuyler; People ex rel. Wasson* v. *Schuyler, Auditor*, 69 N. Y., 242.) There is no presumption of knowledge in the Legislature of papers on file in the State offices. (*People ex rel. Wasson* v. *Auditor*, 69 N. Y., 243; *Lancey* v. *Bryant*, 30 Main, 466; *People* v. *Batchelder*, 22 N. Y., 128.)

LEARNED, P. J. :

The complaint in this action alleges that the defendants, through Denison, without right, by means of frauds, devices, false pretences and vouchers, and corrupt combinations with the State officers, have obtained moneys owned by and belonging to the State, to the sum of $417,571. It sets out the alleged frauds, and avers that the defendants falsely pretended and procured false certificates from engineers on the canal that they had performed work and furnished materials to the amount of $150,337.02 ; while in fact no part of the work had been done or the materials furnished, but the claim was wholly fictitious. It avers that the defendants, under pretence of the authority of their contract, constructed certain vertical wall, falsely pretending it was under the contract and received pay therefor ; that they pretended that they had excavated rock to a large amount ; that they received pay therefor which was more than the value of such work and more than the amount bid therefor by bidders who competed for the contract.

The complaint further avers in detail that by the contract only

a certain amount of excavation, and a certain amount of embankment, were called for; that the defendant Denison was not the lowest of the bidders; that the defendants received payment for more than was called for by the contract; that said moneys were received under the false pretence that they were due under the contract. There are similar charges as to pine docking and chestnut timber; and there is an averment that the defendants pretended to have furnished, under the contract, wrought and cast iron, etc., and have received pay therefor without right.

The complaint further avers that the vertical wall built by the defendants was not properly built in certain specified particulars; that the defendants falsely pretended that the wall was properly built, and corruptly procured the engineers to certify to the work, and by such fraudulent vouchers obtained from the State large sums, which are specified.

And it finally avers that the moneys paid to the defendants were paid by the State treasurer, in ignorance of the fact, and under the belief, that the defendants were entitled thereto; and that the false vouchers were procured by corrupt influence.

It will thus be seen that the complaint is throughout based on general allegations of fraudulent and corrupt practice, by which the defendants are alleged to have induced the officers of the State to make false vouchers, and on alleged fraudulent construction of certain work; and upon alleged fraudulent pretences as to the doing of certain work and furnishing certain materials.

The report of the referees does not find that the defendants were guilty of any fraud whatever; it does not find that any false certificates of work were ever given; it does not find that the defendants made any false statements as to any work done or material furnished; it does not find that there have been any corrupt combinations with any State officers. In a word, the report is silent as to any fraud on the part of any person, and is silent as to any imperfection in the work done by the defendants.

And, so far as we can see, from examination of the case, there is no evidence of any fraud or imperfect work. Nor does the opinion of the referees suggest, or the argument of the plaintiff's indicate, anything of the kind.

The report of the referees finds that the engineer of a division

of the canal submitted to the board a certain estimate "for removing wall benches and constructing slope pavement and vertical and retaining walls, and straightening the Erie canal from Port Schuyler to the lower Mohawk aqueduct. Chapter 877, Laws of 1869.) Estimated cost, $84,645." This estimate was adopted and the work advertised in pursuance of section 4, chapter 877, Laws of 1869. Denison was declared to be the lowest bidder; and that result was arrived at by multiplying the prices in the bids by the quantities in the estimate, and thereupon he executed a contract. The other defendants became interested with him.

Afterwards, and between September 9, 1869, and August 1, 1875, the defendants did work and furnished materials on the canal at the section named in the contract and certain places adjacent. And the resident and division engineers, from time to time, swore to estimates of such work and materials. These estimates amounted in the total to $491,245.05; and that amount, less fifteen per cent retained, was paid by the auditor of the canal department; such payments amounting to $417,571.

Of this sum of $491,245.05 so estimated, $276,449 was estimated for work done and materials furnished in removing the slope pavement wall between locks Nos. 3 and 18, and constructing vertical wall in its place.

The amount of slope wall and of vertical wall, estimated in the aforesaid estimate, was sufficient in quantity to build slope and vertical wall on all that part of the canal between Port Schuyler and the Lower Mohawk aqueduct, where there were wall benches; and there were no wall benches between locks 3 and 18.

No written statement, description or direction that vertical wall should be substituted for slope wall, on any portion of the distances embraced within the contract, was ever made or signed by the State officers.

The finding of the referees on the questions of law, explained by their opinion, shows that they hold that the contract made by the defendants with the State was a contract for doing the amount of work of each description described in the estimate; that the public officers had no right to change it so as to direct the removal of slope wall instead of the removal of wall benches; or the construction of a much larger quantity of vertical wall than the original estimate:

HUN — VOL. XIX.    19

that the removal of the original slope wall was unauthorized, either by law or by the contract: that the change of slope wall into vertical wall was unauthorized, either by law or by the contract: that, therefore, the money paid therefor can be recovered back; unless the Legislature have subsequently ratified the act of the defendants, and that the Legislature have not done so.

There are three important questions presented.

First. Can there be a recovery under this complaint without proof of fraud?

Second. Can money paid under such circumstances be recovered back?

Third. Has there been a ratification by the State?

1st. At the close of the trial the defendants requested the referees to find, among other things, that the complaint described and claims a right to recover upon a cause of action arising out of tort, and that a recovery cannot be had upon a cause of action arising on contract.

It can hardly be questioned that this complaint is based on fraud. There is but one general cause of action, which is that the defendants under the color of the contract, " by means of frauds, devices, false pretences and vouchers and corrupt combinations and collusions with State officers" obtained $417,571. The rest of the complaint, except the conclusion, contains a specification of the various frauds, alleging false pretences, imperfective building and the like; and the conclusion is that the false vouchers and certificates were procured by corrupt influences, partly political. Is there any doubt that under such a complaint the plaintiffs were at liberty to prove actual fraud and corrupt combinations? Or that on a judgment in their favor the execution might issue against the person? The form of the summons also shows that the action is not on contract, as it was issued under subd. 2, section 129, Old Code. (*Miller* v. *Barber*, 66 N. Y., 564.)

On the other hand it is equally plain that no proof of fraud was given (to judge from the case), and that the referees have found no fraud, but have rendered a report for the plaintiffs, on the ground that (as they find) certain work done and materials furnished by the defendants, for which they have been paid by the plaintiffs, were done and furnished without authority of law, and

therefore that the plaintiffs are entitled to recover back what they have thus paid.

Now this action to recover back money paid has always been an action of an equitable nature. It was formerly brought in assumpsit for money had and received to the use of the plaintiff. It was an action on implied contract growing out of the duty of the defendant to refund money, which it was inequitable to retain. It was not in any respect based on fraud.

Can then a plaintiff sue in fraud and recover on contract ? The contrary has been distinctly held. (*Barnes* v. *Quigley*, 59 N. Y., 265; *Dudley* v. *Scranton*, 57 id., 428; *Ross* v. *Mather*, 51 id., 110; *DeGraw* v. *Elmore*, 50 id., 1.) No case is cited by the plaintiffs holding any other view. The complaint is not that the defendants procured the execution of the contract by fraud ; and the plaintiffs do not repudiate the contract. The complaint is that, under that contract, the defendants by fraud obtained money from the plaintiffs. So that the *gravamen* of the complaint is the fraud. For these reasons, as we think, the plaintiffs were not entitled under this complaint to recover where they utterly failed to prove any fraud.

But second, passing this question of pleading, can this money be recovered back ?

The act of 1869, chapter 877 at page 2144 provided for the removing wall benches, constructing slope, pavement and vertical walls and straightening the Erie canal on the eastern division. No moneys were to be expended, or contract to be made, until plans had been submitted. By the terms of the contract for removing wall benches, etc., from Port Schuyler to the lower Mohawk aqueduct, entered into between the State and Denison, the total amount paid was not to exceed the estimated amount of the work ; which was $84,645.

After the making of this contract and under the same (as assumed) the defendants removed slope wall and constructed vertical wall in its place, instead of only removing wall benches ; and they constructed a much larger amount of vertical wall than the original estimate. And for this they have been paid largely beyond the original specified estimate. Assuming then, for the present, that the work was beyond the terms of the contract, and

even that it was outside of the work authorized by the act of 1869, we have these facts; that the defendants have done the work on the property of the State; that the State has received and still retains the benefit of the work; that through the State officers, within whose general duty the matter came, the State has paid for the work; and, in the absence of proof to the contrary, that the work was worth what was paid for it, and that it was done in good faith.

It is not the peculiar privilege of the State to be dishonest and unjust. And if this were a question between individuals, it would seem that there could be little doubt that no recovery could be had. This action to recover back money which has been paid is, as already stated, of an equitable character. (*Buel* v. *Boughton,* 2 Den., 92; *Barber* v. *Cary*, 11 Barb., 549.) It is based on the ground that it is inequitable to retain the money. And hence the question of what is equitable on both sides is open. Is it equitable for a party to retain the possession and benefit of work, done in good faith on his property and paid for from time to time by those who were his agents (even though they exceeded their authority), and to recover back from the person who did the work all the money paid therefor? Certainly not; in the absence of actual fraud.

The plaintiffs rest their right to recover principally on the case of *Supervisors* v. *Ellis* (59 N. Y., 620). But that case is entirely different. Ellis, while supervisor, had charged and received a per diem allowance and mileage while serving on committees when the board was not in session; and also his costs and counsel fees in an action to establish his right to the office of police commissioner. The former claim was directly contrary to express statute. The latter was one with which the county had nothing to do. Neither legally nor equitably was he entitled to the money. The county had received nothing therefor. The payment to him was a mere gratuity. It was not a payment for some valuable property actually parted with by him, received by the county and still retained by it. If the present defendants had presented to the State officers a claim, and had received payment for their costs and counsel fees in some litigation, or for their personal services in superintending this work done on the canal, then this

case would be more nearly analogous to the case of Ellis. But in this present case the State, the plaintiff, retains the title to the material, and accepts the benefit of the work, for which the defendants have been paid ; and then asks that the defendants shall pay back the money they have received. This is not honest.

*Donahoe* v. *The Mayor* (17 N. Y. S. C. [10 Hun], 37), cited by plaintiffs, is a case where the defendant set up a counter-claim. The counter-claim was an over payment, viz., a payment at seventy-five cents per yard instead of fifty cents per yard, the contract price. The extra twenty-five cents was, of course, without consideration. And that case is not like the present.

The case of *McDonald* v. *The Mayor* (68 N. Y., 23) was not an action to recover back money which had been paid. It was an action to recover the value of materials alleged to have been delivered. It was therefore an action based on a strictly legal right, and not upon any equitable principles; and it was held that the city was not liable on an implied promise to pay for such materials when no contract had been made therefor according to the charter. Because there was " an express legislative inhibition on the city that it may not incur liability unless by writing and by record." Is there any express legislative inhibition, or constitutional provision forbidding the State to pay for work done and materials furnished for it ? And the opinion in that case is carefully limited at the end by this remark : " This opinion goes no further than to hold that where a person makes a contract with the city of New York for supplies to it, without the requirements of the charter being observed, he may not recover the value thereof upon an implied liability." Would the court have held, if an official of the city, taking some of the money of the city, had bought and paid for a load of stone, that the city could have retained the stone and recovered back the money ?

In the case of *Nelson* v. *Mayor* (63 N. Y.; 535) it is said of the city that " if it obtains property under a void contract, and actually uses the property and collects the value of it from property owners by means of assessments, the plainest principles of justice require that it should make compensation for the value of such property to the person from whom it was obtained." To apply that remark to the present case, the State has obtained this

property ; it has collected the value of it by its taxation and other means of raising money ; and it has gone further and has even paid for the property. The plainest principles of justice require that it should not get the money back again from the persons from whom it obtained the property. And see *Brady* v. *Mayor* (20 N. Y., 319).

We may admit the general principle that different rules prevail in respect to the acts and declarations of public agents from those which ordinarily govern in the case of mere private agents. (*Whiteside* v. *United States*, 3 Otto, 247.) But that principle is one intended rather to protect a State against improper claims than to enable a State itself to do injustice. And so it was held in the case of *The People* v. *Stephens* (71 N. Y., 527), where it was laid down that the State in its contracts with individuals must be judged, and must abide, by the same rules which govern similar cases among individuals. And see pages 540, 559, 560 for a full statement of this doctrine and for the effect of the acts of officers in binding the State. " The payments were voluntary and with knowledge of the fraud, and within well settled principles cannot be recovered back." " Parties dealing with State officers may regard their action as a finality." " Even were the controversy between individuals, it cannot be seriously claimed that payments voluntarily made, with full knowledge of the facts, could be recovered back in any form of action." These remarks become still more forcible in their application to a case like the present where no fraud is shown.

The plaintiffs claim that because the defendant built vertical wall where there was before slope wall, and not simply where there were wall benches, the money paid therefor can be recovered back.

To illustrate the result of such a doctrine, we may take another case. The Session Laws of 1877, chapter 275, page 303, require the new capitol commissioners to " build and complete the exterior of the new capitol building in Italian renaissance style of architecture adopted in the original design." If, at some future time, it should be thought that the commissioners had violated this requirement, would the State be authorized to recover back from a builder, or contractor, money paid to him, upon proving that

THIRD DEPARTMENT, NOVEMBER TERM, 1879.

this exterior had not been built according to the style expressly required by the statute, or even that a style much more expensive had been adopted ? Yet such builder or contractor might be said to be bound to know the statute law, and to be bound to take notice that (in the supposed case) the commissioners were violating the express provisions of the statute and were having work done which was unauthorized by law.

The defendants expressly raised before the referees the point that the State could only recover such moneys as might remain in the defendants hands, after deducting the value of the work and materials which now remain in the possession and enjoyment of the State. And no question appears to be made on the case as presented but that the work and materials were, in fact, worth all that was paid therefor. The referees must therefore have based their report on the ground that, whatever the value of the work and materials, the State was entitled to receive back all it had paid.

The views which are above expressed render it unnecessary to examine expressly the third point, that of ratification through subsequent appropriations. So far as the fact of actual payment, from time to time, through the proper State officers, may be called a ratification, the matter has been considered already.

We think, for these reasons, that the judgment should be reversed, a new trial granted, and the reference discharged. Costs to abide the event.

Present — LEARNED, P. J., BOCKES and BOARDMAN, JJ.

Judgment reversed, reference discharged, new trial granted, costs to abide event.