Corlett, J.
On the 27th day of October, 1883, a mortgage was executed by Charles Schilling and wife to Evans, to secure the payment of $600, with interest, on about 32 acres of land, consisting of four pieces, in the tow’n of Boyal ton, Niagara county. It was recorded in the clerk is office of that county on the 29th day of October, 1883, in Liber 107 of Mortgages, at page 552. A bond accompanied the mortgage in the usual form. The record title to all the land was in the mortgagor, except four acres, which the record showed to be in Fred Schilling, the father of the mortgagor. Evans declined to take the mortgage until the mortgagor had obtained the record title to these four acres, which he did, and the money was obtained from the mortgagee. Afterwards it was paid down to $315.42. Default having been made in the payment of that balance, it was foreclosed in the Niagara county court. The mortgagee, his attorney, and the defendant Charles Specht were ignorant of the mortgage being a second lien. The plaintiff in No. 1 bid off the premises at the foreclosure sale for $1,075, he also believing it to be the first lien. All the parties relied upon a search made by the county clerk of Niagara county, which did not disclose the prior lien. The sheriff’s fees and the costs of the plaintiff’s attorney were paid out of the bid, and the amount unpaid upon the mortgage was also paid to the assignee, and the balance, $643.62, was deposited with the county treasurer of Niagara county. On the 8th day of February, 1873, Charles ¡Schilling and wife executed a mortgage to John T. Murray to secure the payment of $1,200 on the same land, which was recorded in the Niagara county clerk’s office on the 10th day of February, 1873, in Liber 123 of Mortgages, at page 70, and assigned by Murray to the plaintiff in No. 2. This *706 mortgage was properly signed by the mortgagors, they being Germans, but the writer spelled the name “Schelleng” instead of “Schilling.” The clerk recorded it as “Shelleng,” translating the German names in that way, but making a note opposite each name, “In German.” At the time the first and second mortgages were executed, index books were kept in the county clerk’s office; a book being kept for each letter. The clerk in his search did not discover the first mortgage. This omission caused the belief that the second mortgage was the first. Both actions were tried as one.
One of the contentions on the trials of the above actions was that the difference in spelling misled the clerk, and that, as against the second mortgage, the first must be treated as unrecorded, making the second the prior lien. On the part of the plaintiff in Ho. 2 it is claimed that the difference in spelling was immaterial, and that the first mortgage was the prior lien. In Insurance Co. v. Dake, 87 N. Y. 257, it was decided that the index was no part of the record; so that a mortgagee could not be prejudiced, or his lien impaired, even if the clerk had omitted to index altogether. Simonson v. Falihee, 25 Hun, 570; Bedford v. Tupper, 30 Hun, 174. The learned counsel for the plaintiff in Ho. 2 cites Huston v. Seeley, 2 Alb. Law J. 275; Beaver v. Slanker, 94 Ill. 175, 176; Fallon v. Kehoe, 38 Cal. 44; Heil 0the difference in spelling or pronunciation (the mortgagors being German) was immaterial. The learned counsel also claims that, there being four pieces of land, an inspection of the records would have clearly shown that the mortgagor in each case was the same person. The learned counsel for the judgment creditors and the assignee of the second mortgage cites, in support of his contention that the second mortgage was the first lien, the following; 1 Jones, Mortg. § 550; Frost v. Beekman, 1 Johns. Ch. 288, 18 Johns. 544; Peck v. Mallams, 10 N. Y. 519; Gilchrist v. Gough, 19 Alb. Law J. 276; Terrell v. Andrew Co., 44 Mo. 309; Jennings v. Wood, 20 Ohio, 261; Taylor v. Hotchkiss, 2 La. Ann. 917; Disque v. Wright, 49 Iowa, 538; Thomson v. Wilcox, 7 Lans. 376.
It appears from the above authofities that where the initial letter is different, or where a different lot of land is described, although intended to be the same, or where a different name is used, the record is not notice; but where the initial letter is the same, and the spelling somewhat similar, and the description alike, a slight error in spelling, or difference in pronunciation, or in the use of letters, must be treated as immaterial; and that, even though a person was actually misled or omitted to discover the truth, still the first mortgage would have a priority over the second. In the present case the mortgagors properly spelled their names in German when the instrument was executed; the lands were properly described; the spelling not very dissimilar; and the parties, being Germans, which fact was noted by the clerk on the record, the conclusion is readied that the mortgage in Ho. 2 falls within the reasoning of the cases cited by the counsel, and that the difference in spelling is immaterial. The first mortgage must therefore be adjudged the prior lien.
Soon after the foreclosure and sale above mentioned the purchaser learned of the first mortgage. The judgment creditors commenced proceedings to apply the moneys in the county treasurer’s hands upon their liens. The plaintiff in Ho. 1 commenced this action, and obtained a preliminary injunction preventing the application of the moneys upon the judgments. The learned counsel for the judgment creditors (all whose liens are subsequent to the second mortgage) cites numerous authorities proving that application to set aside the sale should be made in the court where the foreclosure was had; and that such a result could not be secured by a bill in equity. Such, undoubtedly, is the general rule. It is also true that a person, by becoming a purchaser, submits himself to the jurisdiction of the court in which the fore *707 -closure is had. May v. May, 11 Paige, 201; Requa v. Rea, 2 Paige, 339; Cazet v. Hubbell, 36 N. Y. 677; Hale v. Clauson, 60 N. Y. 339. The sale in this case was regular; all the parties acted in good faith; no motion was made to set it aside in the county court. Under these circumstances, the sale must be allowed to stand, and the expenses, including the sheriff’s fees and .attorney’s costs, must remain as disposed of after the sale. Those matters were incidents, and, so long as the sale is not disturbed, the costs and expenses attending it should remain undisturbed.
But a different question arises in reference to the surplus moneys deposited with the treasurer. Those moneys were paid by the plaintiff in PTo. 1, and received by the sheriff on the mistaken assumption that the mortgage foreclosed was the first lien. Except for this mistake, the moneys would not have been paid. It is a familiar rule that equity affords relief in cases of mutual mistake. 1 Story Eq. Jur. (13th Ed.) 149, and the cases there cited; Will. Eq. Jur. 69. It is also true that the first mortgage, whether subordinated to the second or not, was good as against the judgments, even though it liad never been recorded. Will. Eq. Jur. 255; 2 Story,Eq. Jur. (13th Ed.) 828. If the first mortgage had been adjudged subordinate to the second, its owner would be entitled to these surplus moneys as against these judgments. The plaintiff in PTo. 1, to the extent of these moneys, occupied the same position in •equity as the ownerof the first mortgage would under the circumstances in•dicated. The money practically was paid and received under a mistake of fact. Equity grants relief under such circumstances. The following are a few of the eases which illustrate this principle: Barber v. Cary, 11 Barb. 549; Buel v. Boughton, 2 Denio, 91; Bartlett v. Gale, 4 Paige, 503; Cope v. Wheeler, 41 N. Y. 803; Hammond v. Morgan, 101 N. Y. 179, 4 N. E. Rep. 328. Although the technical title of the four acres was in his father at the ■time the first mortgage was executed, still the mortgagor was the substantial owner, and had a mortgageable interest. The rule is thus stated, in substance, in 2 Story, Eq. Jur. 111. If a man has entered into a valid contract for the purchase of land, he is treated in equity as the owner. The purchaser may devise it as land before the conveyance is made, and it passes by descent to the heir. He is deemed in equity to stand seised for the benefit of the pur■ehaser. Crane v. Turner, 7 Hun. 357, affirmed 67 N. Y. 437. In this case the mortgagor had fully paid for the land long before. He was in possession, and had been for more than 20 years. His occupancy was open and notorious/ This was sufficient notice to a purchaser or mortgagee to put him upon Inquiry, even though he had no actual notice of the exact nature of his title. The money deposited with the county treasurer must be paid to the plaintiff in Ho. 1. All the facts are alleged in the complaint in that action, and this court, having jurisdiction, has power to grant full relief, (Taylor v. Taylor, 43 N. Y. 578, 584; Gillian v. Norton, 33 How. Pr. 373;) and this without regard to the prayer, which is no part of the complaint, (Marquat v. Marquat, 12 N. Y. 336.) The second mortgage has been fully paid, so its owner has no -interest in the controversy. The owner of the first mortgage, if it had never been recorded, would be entitled to the moneys, as against the judgments, so that they could claim no surplus, in any event, until after the full satisfaction -of both mortgages. The land is worth about $1,800, so that, with the aid of this money, the plaintiff in Ho. 1 will not sustain serious loss. The plaintiff in Ho. 1 must be allowed to pay the first mortgage within 20 days after service of a copy of the decree, upon which Ho. 2 must be discontinued without costs, and the mortgage discharged of record; none of the parties to this action to recover costs against the others.