### McMURRAY v. ENNIS.

*(City Court of Brooklyn, General Term. June 23, 1890.)*

ADMINISTRATOR—BANK-CHECK PAID AFTER DRAWER'S DEATH.

   An administrator of a solvent estate cannot recover moneys obtained from a bank, after deceased's death, upon a check given by him a few days before death, in payment of debts, though the holder knew of his death, and failed to inform the bank thereof.

Appeal from trial term.

Action by Mary Ann McMurray, as administratrix of Lawrence Ennis, deceased, against Teresa Ennis. The judgment was for the plaintiff. Defendant appeals.

Argued before VAN WYCK and OSBORNE, JJ.

Stinson & Williams, for appellant. L. B. Bunnell, for respondent.

VAN WYCK, J. The trial court, at the request of both parties, and without objection or exception of either, found that Lawrence Ennis, a few days before his death, delivered, for valuable consideration, checks for $1,200 drawn by him to the order of defendant, Teresa Ennis, which checks she had cashed at the bank a few days after his death, without disclosing his death. This is an action by his administratrix to recover from defendant such sum for money had and received by her to plaintiff's use. Judgment was rendered in favor of plaintiff, from which defendant appeals. There is no controverted question of fact raised by either party, and there is no intimation that the estate of Ennis is insolvent. This appeal presents to us a single question of law, viz.: If a debtor, a few days before his death, delivers, in payment of his indebtedness, his own check to the order of his creditor, who a few days after such death receives from the bank the money on the same without informing the bank of the death, can the administratrix of such dead debtor recover the sum so received by the creditor, when the estate is not shown to be insolvent? Strange to say, an apparently thorough research fails to disclose either an English or American authority adjudicating this point. This would indicate either that such a case seldom occurs, or, if it frequently occurs in actual practice, the business mind, at least, has acquiesced in the regularity and justice thereof. When we consider the universal use of the bank-check to transfer money from debtor to creditor in this country and England, in the transaction of the immense volume of commercial, mercantile, and other business, requiring millions of checks in each year, the conviction is irresistible that it daily occurs that, at the death of debtors, their checks to order of creditors are uncollected in the hands of creditors, or in the mail for them, or on deposit with banks or bankers, or in the mail after such deposit, for collection. The well-known diligence and alertness of creditors engaged in every branch of business renders it certain that, in daily practice, checks of deceased debtors in the possession of creditors are paid by the banks until such banks are actually informed of death of the drawers. Any other rule would do much to clog the wheels of business, and bank-checks would fall into disuse; for banks would not pay them unless they had actual information that the drawers were alive, and creditors in cash transactions would not receive-payment by check. What we deem to be the existing practice should be upheld in the interest of the business public, creditors, banks, and debtors, unless to do so would violate some established rule of law. The doctrine evolved from such a practice antagonizes no express adjudication on the exact point. Respondent suggests that it is hostile to the principle of proportionate equality of creditors in the assets of a dead debtor. The answer to that objection is that the infringement of such right is not involved in this case, for there is not the slightest intimation in the evidence that the Ennis estate is insolvent. Then, again, the doctrine, so far as it applies to the cause at bar, is in perfect harmony with the equally well established rule that creditors of the solvent estate of a deceased debtor are entitled to be paid in full. Defendant has not exceeded her right in that respect. Respondent laid some stress on the rule that death revokes the authority of an agent, but he overlooked the modification or exception thereto. A creditor receiving from a debtor a check in payment of his claim, it is an authority coupled with an interest, viz., to receive the money from the bank, if it will pay the same, and retain the money as his own. Such an authority, death never revokes. Respondent chiefly rests his right to recovery on the theory that death vests all the personal property of

the intestate, *instanter*, in his administratrix. This is only partially true. It is not vested absolutely in her to do with as she pleases, but rather in trust to pay the debts due the creditors in full, if sufficient. The most that can be said in this case is that such trust has executed itself, so far as defendant is concerned, by virtue of the particular circumstances surrounding the transaction, without the active intervention of the administratrix. The contention of appellant does not, in our opinion, invade, harmfully at least, any of the established principles of our law.

The action for money had and received to the use of another is in its nature a purely equitable action, and can never be maintained unless, according to natural justice and equity, the plaintiff is entitled to the money as against the defendant. It admits of any defense which shows the plaintiff ought not, in good conscience, to recover. "In one word, the gist of this kind of action is that the defendant, upon the circumstances of the case, is obliged, by the ties of natural justice and equity, to refund the money." *Moses* v. *Macferlan*, 2 Burrows, 1010, 1012; *Bank* v. *Raymond*, 3 Wend. 69, 74; *Eddy* v. *Smith*, 13 Wend. 489. "Whether the defendant could sue at law, in his own name, to recover the money, or whether, having fairly got it, this action for money had and received to the plaintiff's use can be maintained, are very different questions. This is an equitable action, which may be defended upon the same equitable principles as those upon which it is maintained. As a general rule the question is, to which party, *ex æquo et bono*, does the money belong? * * * To allow the plaintiff to recover it back would be to make this the first in a circuit of four actions, which would end in leaving the money just where it was in the beginning." *Buel* v. *Boughton*, 2 Denio, 91, see 93. See, also, *Moyer* v. *Shoemaker*, 5 Barb. 319; *Barber* v. *Cary*, 11 Barb. 549, 551; *Bank* v. *Eltinge*, 66 N. Y. 625, see 626. Testing the case before us by the principles of the foregoing authorities, it is quite evident they do not favor the recovery of plaintiff. Defendant was a creditor of Lawrence Ennis, and so found to be by the court, at the request of both parties, without objection or exception. *Fish* v. *Jacobsohn*, *40 N. Y. 539. It was his moral and legal duty to pay her, and he did all he could to do so out of his funds in this bank, which cashed the check for her. She was entitled to be paid in full by him during his life, or out of his estate after death, if solvent. Under such circumstances, she is not obliged, "by the ties of natural justice and equity, to refund the money." Her retention of it is not against good conscience. In the language of BRONSON, J., in *Buel* v. *Boughton*, 2 Denio, 94, "to allow the plaintiff to recover it back would be to make this the first * * * [of two actions] which would end in leaving the money just where it was at the beginning."

Though the exact question before us has apparently never been passed upon by the courts, yet we find it discussed in two cases, and expressions made favorable to the contention of this appellant. In *Tate* v. *Hilbert*, 2 Ves. Jr. 118, Chancellor LOUGHBOROUGH said: "If she had received it [meaning the money on a check] immediately after the death of the testator, before the banker was apprised of it, I am inclined to think no court would have taken it from her." RUGGLES, J., in *Harris* v. *Clark*, 3 N. Y. 93, at p. 110, said: "If the draft had been accepted by Clark & Co., the drawees, before or after the death of Sidney Smith, the drawer, it would have operated from the time of Smith's death as an assignment, * * * and would have afforded to the plaintiff a remedy against that firm." It is true that the decision in both of these cases turned upon other questions, and these quotations from the opinions are mere *obiter dicta;* but they show that the only judicial expressions found upon the point here involved have been in accord with what we have suggested and believe to be the actual practice in business circles. The text-writers on negotiable paper seem to take the same view. Daniel, Neg. Inst. § 1618*b*, and note; Parsons, Notes & B. (2d Ed.) 287; Chit. Bills, (12th Amer. Ed.) p. 325,

note 1; Benj. Chalm. Bills, (1889,) pp. 273, 274, notes.   Banks, bankers, hold-
ers of checks, and the personal representatives of deceased drawers of checks,
must be assumed to have been familiar with this unanimity of expression of
courts and text-writers upon this doctrine, and to have acted upon and ac-
quiesced in it as well, judging from the dearth of contests in relation thereto
in reported cases.   This seemingly accepted doctrine should not be disturbed,
unless some special equity should intervene, calling for its modification in the
particular case,—for instance, to prevent an unconscionable preference of one
creditor of an insolvent estate over the others; to prevent the retention of
money so collected on a check given without consideration, or obtained by
fraud, or given as a step in an incomplete *donatio causa mortis;* or to pre-
vent the success of any attempted wrong against good conscience, natural
justice, and equity.   In our opinion, this judgment should be reversed, and
new trial ordered, with costs to abide the event.